DECLARATION OF ROBERT B. HEUCHLING

I, Robert B. Heuchling, declare and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am aware that the claimants in case numbers 16-CV-5362-DSF (PLAx), 16-CV-5364-DSF (PLAx), 16-CV-5367-DSF (PLAx), 16-CV-5368-DSF (PLAx), 16-CV-5369-DSF (PLAx), 16-CV-5370-DSF (PLAx), 16-CV-5371-DSF (PLAx), 16-CV-5374-DSF (PLAx), 16-CV-5375-DSF (PLAx), 16-CV-5376-DSF (PLAx), 16-CV-5377-DSF (PLAx), 16-CV-5378-DSF (PLAx), 16-CV-5379-DSF (PLAx), and 16-CV-5480-DSF (PLAx) (collectively the "Claimants") filed oppositions to the United States' motions to stay the proceedings in those cases (collectively "the 1MBD Actions") while the United States conducts an ongoing criminal investigation directly related to the allegations set forth in the First Amended Complaints ("FACs") filed in those actions. Specifically, the FACs allege that, over the course of four phases (collectively the "Criminal Phases"), billions of dollars were stolen from the Malaysian government's 1Malaysia Development Berhad ("1MBD"), a strategic investment company. I am familiar with the allegations set out in the FACs, and the scope and subject matter of the related, ongoing criminal investigation of the Criminal Phases alleged therein.

2. The 1MDB Actions and the ongoing criminal investigation are related because they involve the same or substantially the same parties, witnesses, facts and circumstances. Specifically, the United States is investigating the individuals, entities, financial and monetary transactions, and investment vehicles involved in the Criminal Phases. As alleged in the FACs, one of the Criminal Phases involved the fraudulent diversion of more than $1 billion in proceeds from 1MDB to a Swiss bank account held in the name of Good Star Ltd.

(the "Good Star Account"). The FACs allege that Taek Jho Low ("Low"), a Malaysian national, controlled the Good Star Account, and used the criminal proceeds diverted from 1MBD and deposited into the Good Star Account to purchase tens of millions of dollars of assets in the United States. During two of the other Criminal Phases, the FACs allege that Low and his associates conspired to divert and misappropriate approximately more than $2.5 billion in proceeds that 1MDB raised through multiple bond offerings in 2012 and 2013. Many of these funds were then used to acquire assets that are the subject of the 1MDB Actions. Similarly, during another Criminal Phase, the FACs allege that 1MDB officials and their associates conspired to misappropriate approximately $850 million in 1MDB funds that were borrowed from a syndicate of banks led by Deutsche Bank. Some of these funds were also used to acquire assets relating to the 1MDB Actions.

 3. The FACs allege that the individuals who were involved in the Criminal Phases include, but are not limited to, Low; Riza Aziz ("Aziz"), a Malaysian national and the step-son of the senior Malaysian official who oversaw 1MDB; and Khadem al-Qubaisi ("Qubaisi") . Moreover, the FACs allege that Low and several others, including Aziz and Qubaisi, were involved in or facilitated several multi-million dollar transfers that were made as part of the Criminal Phases. Many of these transfers and Low and others' involvement in them are described in the FACs, underscoring the direct relationship between the 1MBD Actions and the ongoing criminal investigation.

 4. I believe that allowing discovery or other proceedings to occur in the 1MBD Actions will have an adverse impact on the United States' ongoing criminal investigation. This concern is not

hypothetical, but real, especially in light of some of the broad discovery requests that have already been served on the government.

5. To date, I am aware that claimants in case numbers 16-CV-5368-DSF (PLAx), 16-CV-5369-DSF (PLAx), and 16-CV-5378-DSF (PLAx) have served the United States with First Requests for Production of Documents ("RPDs") that seek to compel the United States to produce robust discovery relating to its investigation of the allegations set out in the FACs, including the identity of witnesses who provided information to the United States, the sources of evidence from whom the United States obtained relevant information, as well as thousands of documents relating to the Criminal Phases. I understand that these three actions allege that the claimants are controlled by FFP, a Cayman Islands entity, that also controls the claimants in four other 1MBD Actions in which the United States is seeking to forfeit assets allegedly acquired by Low (collectively the "Low Claimants"). The RPDs served by the Low Claimants in case numbers 16-CV-5368-DSF (PLAx), 16-CV-5369-DSF (PLAx), and 16-CV-5378-DSF (PLAx) are attached to my declaration as Exhibits ("Exs.") A-C, respectively.

6. The RPDs served by the Low Claimants (as well as the Second Requests for Production of Documents that the Low Claimants filed with their oppositions) are broad and encompass not only the evidence relevant to this case but to *all* of the 1MBD Actions, including forfeiture actions in which the Low Claimants are not parties. Exs. A-C. For example, the Low Claimants request "[a]ll [d]ocuments and [c]ommunications" "identified or otherwise referenced in the [1MBD Civil Forfeiture Action] Complaint[s]" as well as "[a]ll discovery responses . . . from *any* claimant in any of the [1MDB Actions]" (Requests 1, 13) (emphasis added). Ex. A. Responding to this discovery request would require the United States to provide the Low

15

Claimants with broad, sweeping discovery not only in the 1MBD Actions in which they are named parties, but in *any* of the 1MBD Actions involving *any* of the claimants, including the forfeiture actions involving the non-Low Claimants.  According to the Low Claimants' RPDs, their document requests are meant to capture, among other evidence, "[a]ll [d]ocuments and [c]ommunications [c]oncerning" the "purchase, sale, ownership and/or occupation of the Defendant Asset and Subject Assets, including . . . any wire transfers"; various 1MBD board meeting minutes; joint venture and other agreements involving 1MBD; and various bank records relating to bank accounts and financial transactions.  Exs. A-C (Requests 1-96.)

    7.   In case number 16-CV-5378-DSF (PLAx), in which the United States is seeking to forfeit an asset acquired by Low with funds misappropriated from 1MDB, the claimant in that case propounded 358 separate document requests seeking broad discovery into the United States' investigation.  These requests seek "all" documents obtained by the United States during its investigation "[c]oncerning," among other things, individuals and persons referenced in the forfeiture complaint (Requests 1, 3, 10, 14, 19, 47, 48, 100, 152, 301-320, 354-356); transactions cited in the complaint (Requests 2-5, 112, 123-126, 128-139, 157-158, 165, 181, 184-188, 196, 222, 225, 233, 248, 351-358); assets acquired by persons referenced in the complaint (Requests 350-352); the criminal acts alleged in the complaint, including the unlawful diversion and misappropriation of 1MBD and other funds; the material misrepresentations and omissions discussed in the complaint; the knowledge and intent of those involved in the criminal acts; specific money laundering transactions (Requests 143-144, 156, 164, 266, 273, 350-358); the involvement of any one of more than thirty banks in the monetary transactions described in the

complaint (Request 357); and communications that the United States has had with various individuals, persons and their counsel, including Andrew Levander and Joseph Fazioli, two attorneys who represent one of the claimants in a related forfeiture action (16-CV-5370) (Requests 346-348). The claimant's counsel also requests that the United States produce "[a]ll Documents and Communications concerning" twenty different legal entities (Requests 326-345), as well as their "parent[s], subsidiary[ies], affiliate[s], division[s], branch[es], agenc[ies], representative[s], office[s], predecessor[s], successor[s], principal[s], member[s], director[s], officer[s], shareholder[s], manager[s], employee[s], attorney[s]-in-fact, attorney[s], nominee[s], agent[s], or representative[s]" (Definition No. 46).

    8.    The requests for case number 16-CV-5368-DSF (PLAx) are equally broad, requesting that the United States produce, among other things, all "[d]ocuments and [c]ommunications" reviewed and relied on by the Federal Bureau of Investigation ("FBI") agent who verified the forfeiture complaint, "including but not limited to . . . 'information supplied [] by other law enforcement officers, experts, and other witnesses'" (Request No. 2); between any of the over forty individuals discussed or referenced in the forfeiture complaint along with "[d]ocuments sufficient to identify the name, home address, business(es), e-mail address(es), telephone number(s) and facsimile numbers" of these individuals (Request Nos. 3 and 4); and concerning "all subpoenas, Mutual Legal Assistance Treaty ('MLAT') requests" or documents and communications obtained by the United States pursuant to any MLAT requests (Request No. 9).

    9.    Finally, the requests for case number 16-CV-5369-DSF (PLAx) seek, among other things, "all" documents and communications

"[c]oncerning" the extent to which the United States relied upon "any other country or principality" as a source of evidence and information (Requests 1-7); "all" agreements, including cooperation or settlement agreements, the Government entered into with individuals and persons (Request No. 9); "all" "witness statements, transcripts, memoranda of interviews, FD-302 reports, notes or video or audio recordings" "[c]oncerning" the subject matter of the forfeiture complaint (Request No. 5); "all [d]ocuments and [c]ommunications" between the United States and "any other country or principality . . . including . . . Malaysia, Seychelles, Switzerland, Singapore, Luxembourg, Hong Kong, France, the United Kingdom, Australia, the Cayman Islands, New Zealand, the British Virgin Islands, and the United Arab Emirates" or any of these countries' agents or representatives "[c]oncering the allegations contained" in the complaint (Requests 3, 5); as well as "[a]ll [d]ocuments and [c]ommunications [c]oncerning," among other things, facts, transactions, documents, persons and individuals referenced in the pleadings , (Requests 10-15, 17-31).

   10.  All or almost all of these documents are evidence of the conduct underlying the Criminal Phases of the 1MBD Actions. Providing these documents to any of the claimants in the 1MDB Actions could result in their disclosure to other third parties.  The disclosure of such information to subjects or targets of the criminal investigation could give these individuals and entities a preview of the United States' criminal investigation as well as the opportunity to track the status of the criminal investigation.  Disclosure of such materials also will potentially identify witnesses who have provided information to the government, including their identity and location; the sources of the government's information; the

government's investigative strategy and priorities; and the government's methods for acquiring such information.

11.   By obtaining discovery directly from the government or third parties about the government's investigation, individuals and entities involved in the Criminal Phases could potentially conceal, alter, or destroy evidence, as well as intimidate and/or retaliate against potential witnesses.

12.   Indeed, the Low Claimants have specifically requested in their discovery requests "all witness statements, transcripts, memoranda, memoranda of interviews, FD-302 Reports, notes or video or audio recordings"; "[a]ll non-prosecution agreements, deferred prosecution agreements, cooperation agreements, settlements agreements, or any other agreements"; and "[a]ll [d]ocuments and [c]ommunications reviewed, relied upon, or consulted by [FBI SA] Robert B. Heuchling . . . including, but not limited to the 'official files and records of the United States . . . .'" which is indicative of the Low Claimants' intent to identify witnesses with knowledge of the conduct underlying the Criminal Phases, and could result in the production of documents that identify cooperating witnesses (Requests 2, 4, 9).  Exs. A-B.

13.   The Low Claimants also seek broad, intrusive discovery on specific individuals.  For example, the Low Claimants request "[a]ll [d]ocuments comprising [c]ommunications from or to any [p]erson identified or otherwise referenced in the [1MBD Actions], including, but not limited to" Low and approximately forty-one other individuals (Request 3).  Decl. Ex. A.  The Low Claimants also demand "[d]ocuments sufficient to identify the name, home address, business address(es), e-mail address(es), telephone number(s) and facsimile number(s) of each individual identified by a pseudonym" in the

19

complaints filed in the 1MBD Actions, "including, but not limited to" "Deutsche Bank Employee," "Chairman of the 1MBD Board," and approximately thirty-one other individuals (Request 4).  Ex. A.

14. Producing any identifying witness information could result in witness intimidation or jeopardize the safety and security of witnesses – a legitimate concern in this case, given that press reports have publicized potentially retaliatory or threatening acts linked possibly to the 1MDB investigation.  For example:

- On or about September 1, 2015, the media reported that Khairuddin Abu Hassan, an official in the United Malays National Organization, was arrested by Malaysian authorities after he announced that he intended to travel to New York to provide information about 1MDB to the FBI. (*See* "Arrested Najib Critic Was Scheduled to Meet FBI Agents to Lodge 1MDB Complaint," (September 19, 2015), available at:  http://www.straitstimes.com/asia/se-asia/arrested-najib-critic-was-scheduled-to-meet-fbi-agents-to-lodge-1mdb-complaint.)

- Similarly, on or about August 1, 2015, the media reported that three Malaysian law enforcement officials, including a deputy public prosecutor, an official of the Malaysian Anti-Corruption Commission and an official from the Attorney General's Chambers of Malaysia, all of whom were working on a special task force in Malaysia investigating 1MDB, were arrested by Malaysia's Special Branch, Malaysia's intelligence service, because of news reports relating to 1MDB published in the United Kingdom.  (*See* "Special Branch Raids Deputy Public Prosecutor's Office at MACC for 1MDB Documents," (August 2, 2015), available at:

      http://www.msn.com/en-my/news/other/special-branch-raids-deputy-public-prosecutor%E2%80%99s-office-at-macc-for-1mdb-documents/ar-BBljzAK.)

- On or about April 8, 2016, Malaysian media reported that Rafizi Ramli, a member of Malaysia's Parliament, was arrested because he was suspected of disclosing information relating to 1MDB. (*See* "Malaysian Opposition MP Charged Over 1MDB Leak," (April 8, 2016), available at: http://www.channelnewsasia.com/news/asiapacific/malaysian-opposition-mp-charged-over-1mdb-leak-8083906.)

- Just a few days ago, Malaysian local media reported that the driver of former Malaysian attorney-general, Abdul Gani Patail, who opened the initial investigation into 1MDB in that country, was shot in public by two unidentified men. (*See* "Driver's Shooting a Warning to Gani Patail from 'MO1' Not to Assist in DOJ's 1MDB Criminal Probe? Bombshell – FBI Hit Bullseyes with Caution 'The Safety of Certain Law Enforcement Personnel & Their Willingness to Co-operate will be Threatened," Malaysia Chronicle (August 30, 2017), available at http://www.malaysia-chronicle.com/drivers-shooting-a-warning-to-gani-patail-from-mo1-not-to-assist-in-dojs-1mdb-criminal-probe-bombshell-fbi-hit-bullseyes-with-caution-the-safety-of-certain-law-enforcement-personnel-the/.)

    15. A number of individuals, who have provided information to the government have expressed significant concerns relating to safety or retaliation if the identities of certain witnesses, especially those located in certain foreign countries, were disclosed publicly. These individuals have also expressed concern for their own safety

and security if their contact with the United States became known. Likewise, other individuals, either directly or through intermediaries, have contacted the government and indicated that they were also willing to provide information to the government in connection with its investigation but for their concern that they will be subjected to retaliation and place the safety and security of both themselves and their families at serious risk.

16. Proceeding with discovery and responding to the Low Claimants' or other claimants' discovery requests could require the United States to produce the interview reports and other information for these and other individuals, which would jeopardize these individuals' safety and security.

///

///

17. The United States' ongoing criminal investigation into the conduct underlying the Criminal Phases of the 1MBD Actions is ongoing and challenging due not only to the facts and circumstances summarized above, but because much of the relevant documentary evidence and witnesses are overseas. Obtaining this evidence from, and scheduling witness interviews, pursuant to official treaty requests from the United States to other foreign governments takes significant time because it requires extensive coordination with foreign officials and must be completed in a manner that comports with both the laws and procedures of the United States and the foreign state.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2017 at New York, New York.

_____
Robert B. Heuchling
Special Agent
Federal Bureau of Investigation