Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Jeremy D. Matz - State Bar No. 199401
  jmatz@birdmarella.com
Naeun Rim - State Bar No. 263558
  nrim@birdmarella.com
Patricia H. Jun - State Bar No. 277461
  pjun@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Claimant LBH Real Estate
(Beverly Hills) LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   vs.<br><br>THE REAL PROPERTY KNOWN AS THE VICEROY L'ERMITAGE BEVERLY HILLS,<br><br>      Defendants. | CASE NO. 16-CV-5368-DSF (PLAx)<br><br>**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA**<br><br>Assigned to Hon. Dale S. Fischer |

**PROPOUNDING PARTY:**     **CLAIMANT LBH REAL ESTATE (BEVERLY HILLS) LLC**

**RESPONDING PARTY:**     **PLAINTIFF UNITED STATES OF AMERICA**

**SET NO.:**     **ONE**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 34(a), Claimant LBH Real Estate (Beverly Hills) LLC, by and through its undersigned counsel, hereby requests that Plaintiff United States of America ("Plaintiff") produce the documents requested herein, in accordance with all applicable Rules and the Definitions and Instructions set forth below, within thirty (30) days of service of these Requests.

Plaintiff is required to produce the requested documents for inspection or copying on or before July 6, 2017, at 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067.  In lieu of making a personal appearance on the production date, Defendant may append copies of the requested documents to its response to Claimants' Request for Production of Documents.

Pursuant to Rule 34(b)(2)(e) of the Federal Rules of Civil Procedure, Responding Party is obligated to produce responsive documents and electronically stored information as they are kept in the usual course of business and organize and label the documents to correspond to the categories in the request.

Each of the following requests for documents is continuing in nature, pursuant to Rule 26(e) of the FRCP.  Accordingly, if after producing any documents, Plaintiff, or anyone acting on Plaintiff's behalf, obtains or becomes aware of additional information or documents pertaining to any request herein, Plaintiff is requested to produce such information or documents.

## **DEFINITIONS**

1.      The term "Action" refers to this action, captioned *United States v. The Real Property Known as The Viceroy L'Ermitage, Beverly Hills,* 16-cv-05368 (DSF) (PLA) (C.D. Cal.).

2.      The term "Complaint" means the Verified Complaint for Forfeiture *In Rem* filed by Plaintiff on July 20, 2016 in the above-captioned Action.

3.      The term "Claimant" means LBH Real Estate (Beverly Hills) LLC.

4.     The terms "Plaintiff," and  "You" or "Your" means the United States of America in any capacity, including, but not limited to, the Department of State, the Department of the Treasury, the Department of Justice, the Asset Forfeiture and Money Laundering Section of the Criminal Division of the Department of Justice, the U.S. Attorney's Office, the Federal Bureau of Investigation, and any of its employees, agents, attorneys, representatives, investigators, accountants, analysts and all other persons acting for or on behalf of Plaintiff or possessing documents or information for or on behalf of Plaintiff.

5.     The term "Defendant Asset" means the asset identified as such in the Complaint in this matter.

6.     The term "Subject Assets" means the assets identified in paragraph 4 of the Complaint.

7.     The term "Forfeiture Proceeding" means the following cases filed in the Central District of California: 2:16-cv-05362; 2:16-cv-05363; 2:16-cv-05364; 2:16-cv-05366;  2:16-cv-05367;  2:16-cv-05368;  2:16-cv-05369;  2:16-cv-05370; 2:16-cv-05371;  2:16-cv-05374;  2:16-cv-05375;  2:16-cv-05376;  2:16-cv-05377; 2:16-cv-05378;  2:16-cv-05379; 2:16-cv-05380.

8.     The terms "Document" or "Documents" have the broadest meaning accorded under the FRCP, and include all written, printed, typed, reported, recorded, pictorial, or graphic matter, however produced or reproduced, now or at the time of possession, custody, or control, including all letters, telegrams, telexes, e-mail transmission, cables, telephone records, notations, invoices, ledgers, Communications (defined below), journals, formal and informal books of record and account, logs, studies, summaries, minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs, instructions, financial statements, photographs, videotapes, microfilm, other film or tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts, worksheets, contracts, agreements, proposed  contracts  or  agreements  (whether  or  not  actually

consummated), computer data, computer printouts, interoffice memos, computer programs, computer software, tape recordings, transcriptions, drafts of the foregoing items, articles of newspapers, magazines, and other publications, purchase orders, lists, proposals, invoices, plans, specifications, addenda, statements, receipts, confirmation slips, evidence of payments, bills, diaries, calendars, Day Timers, time records, bills of lading, cancelled checks (both sides), audiotapes, and copies, reproductions, translations and original language versions of the foregoing upon which notations in writing have been made which do not appear in the originals.

9.     The terms "Communication" or "Communications"  mean, without limitation, every manner of transmitting, transferring, exchanging, or sharing information, facts, or thoughts in any form, whether orally, in writing, or otherwise, by any means whatsoever, including by oral communication, face-to-face meeting, memorandum, letter, note, mail, telephone, facsimile transmission, telecopy, e-mail, text, SMS or any form of instant messaging available on any electronic device including through WhatsApp or any other messaging software or application.

10.     The term "bank records" means, but is not limited to, original signature cards; document of account opening; documentation concerning account holders; account ledger cards; periodic account statements; records of all items deposited, withdrawn or transferred; records of wire transfers, including all instructions; authorizations, documents of dates, places, persons receiving the funds, and amount of monies transferred in or out; bank check purchases; documents supporting the purposes of a transaction; documentation of due diligence efforts or compliance reviews relating to the account including the know your customer ("KYC"), anti-money laundering ("AML"), and poetically exposed persons ("PEP"); communications to, from, or on behalf of the account holder, trustees and individuals holding signature authority or power of attorney; memoranda related to the account; copies of electronic recordings of any conversations, including conversations relating to the transfer of money into or out of the account; and

information regarding the contents of any safe deposit box opened in the name of or for the benefit of the account holder.

11.     The term "FD-302 Reports" means the reports used to summarize interviews conducted by the Federal Bureau of Investigation, including, but not limited to, the reports themselves, drafts of the reports and memoranda summarizing the contents of the reports.

12.     The term "Financial Institution" means a financial institution as defined under 31 U.S.C. §5312(a)(2).

13.     The term "Monetary Transaction" means a monetary transaction as defined under 18 U.S.C. § 1957(f)(1).

14.     The terms "Representative" or "Representatives" mean, without limitation, directors, officers, officials, agents, employees, partners, shareholders, members, servants, contractors, subcontractors, parent companies, subsidiaries, affiliates, attorneys, and any other persons or entities acting on behalf of a person.

15.     The terms "Person" or "Persons" mean, without limitation, any natural person, corporation, partnership, proprietorship, group, association, organization, firm, enterprise, contractor, business entity, governmental body, or agency, as well as any division, subdivision, bureau, office, or other unit thereof, or any representative of the foregoing.

16.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the request's scope.

17.     The term "Concerning" shall be given the broadest meaning possible, including relating to, referring to, reflecting, constituting, demonstrating, proving, and disproving.

18.     The terms "Identify," "Identity," and "Identification," when used with reference to a Person, mean to give, to the extent known, the Person's full name, present or last known residential and business address, present or last known place

of employment, telephone number, email address, the capacity of such person, whether individual, partnership, corporation, agency or otherwise, and to the extent that such information is known to You or within Your possession or control, when the information provided refers to an organized entity, the place and date of the formation and identity of the responsible agency and officer, and whether the Person is under Your control for purposes of Your ability to produce them for a deposition without the issuance of a subpoena.

19.    The terms "Identify," "Identity," and "Identification," when used with respect to Communications, mean to give, to the extent known: (i) the name of the Person making the Communication and the names of the Persons present while the Communication was made and, where not apparent, the relationship of the Person present to the Person making the Communication; (ii) the date and place of Communication; and (iii) the general subject matter of the Communication.

20.    The terms "Identify," "Identity," and "Identification," when used with respect to Document, mean to give, to the extent known: (i) the type of Document, (ii) its title, if any, (iii) a summary of its contents and subject matter, (iv) the date and place of its preparation, and (v) its author(s), addressee(s), and recipient(s).

21.    The terms "Identify," "Identity," and "Identification," when used with reference to an occasion or instance on which an event, act, or omission occurred, mean to state the date and place of such occasion or instance, to describe the nature of the event, act, or omission and to provide the identification of such Person involved in any way in such event, act, or omission.

22.    The terms "Identify," "Identity," and "Identification" when used in reference to a Monetary Transaction, as defined below, mean to set forth, as applicable:

(a) the date, or dates, of the Monetary Transaction;

(b) the terms of the Monetary Transaction, including, but not limited to, the amount of the Monetary Transaction and the currency denomination of the Monetary Transaction;

(c) the name of each Person involved in the Monetary Transactions, including, but not limited to, the pay or and payee of the Monetary Transaction and the Person(s) authorizing the Monetary Transaction;

(d) the method of the Monetary Transaction (*i.e.*, check, cash, cashier's check, wire transfer, etc.);

(e) if the Monetary Transaction was executed by means of a transfer or payment of funds or property involving one or more Financial Institutions, the account name, account number, and name and location of the Financial Institution for any source and destination accounts involved in the Monetary Transaction;

(f) if the Monetary Transaction was by negotiable instrument, such as by check, the indorser of the instrument and the date the instrument was cashed or deposited; and

(g) any Documents that contain the terms of or otherwise evidence the transaction.

23.    For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests.

24.    Reference to any Person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

25.    Reference to any Person or entity that is not otherwise defined shall have the same meaning as that ascribed to that Person or entity in the Complaint.

Exhibits A-C                     30

## **INSTRUCTIONS**

1.      Unless otherwise noted, the time period covered by this request shall be January 1, 2009 through and including the date of Plaintiff's response.

2.      This request calls for the production of all responsive documents in Your possession, custody, or control, or in the possession, custody, or control of Your employees, accountants, attorneys, agents, or all other Representatives acting on Your behalf, without regard to the physical location of such documents. Without limiting the term "control," a document is deemed to be within one's control if that person or entity has any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof.

3.      In responding to this request, produce all responsive documents prepared, forwarded, considered, or reviewed.

4.      In responding to this request, include documents obtained on Your behalf by Your counsel, employees, experts, agents, or any other persons acting on Your behalf.

5.      If Your response is that the documents are not within Your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document.

6.      If Your response is that the documents are not under Your control, identify who has control and the location of the documents.

7.      All requested documents shall be produced as they are kept in the regular course of business or shall be organized and labeled to correspond to the categories in this request.

8.      All requested documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container. A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document, in addition to the document itself. Whenever a document or group of

documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

9.     To the extent You are producing any electronic or computerized Documents in response to the Requests herein, including but not limited to videos and PowerPoint presentations, such Documents should be produced in their native format with all metadata intact.

10.     Each page of the documents produced in response to this request should be marked with a unique document identification Bates number.

11.     Any reference to a person that is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership ,or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, members, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries, and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

12.     Any documents or other items requested concerning a certain subject matter shall also include documents or other items tending to support, contradict, rebut, or relate to statements made and conclusions drawn concerning such subject matter.

13.     If any document is withheld, in whole or in part, for any reason, including a claim of privilege, whether work-product or attorney-client or other, set forth separately with respect to each such document:

        (a) the nature of the privilege claimed;

(b) the type of document;

(c) the general subject matter of the document;

(d) the date of the document;

(e) the authors of the document;

(f) all persons who received or otherwise have seen copies of the document; and

(g) such other information as is sufficient to enable an assessment of the applicability of the privilege or protection claimed.

14.     To the extent a document subject to an assertion of privilege, a work product claim, or other objection contains any responsive information not subject to such assertion or objection, the information must be produced. Claimed irrelevance is not a lawful basis for redacting or failing to produce part of a document the balance of which contains responsive material.

15.     For each document responsive to this request withheld in part for any reason, including the assertion of privilege, a work product claim, or other objection, indicate the portion of the document so withheld by stamping the words "MATERIAL REDACTED" on the document at an appropriate location on the document that does not obscure the remaining text.

16.     To the extent that there are no documents responsive to a particular request, you shall state so in writing.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications identified or otherwise referenced in the Complaint, including but not limited to the Documents and Communications discussed in Paragraphs 36, 37, 38, 40, 42, 43, 45, 47, 48, 51, 52, 58, 60, 62, 64, 65, 67, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 83, 88, 91, 92, 93, 94, 95, 96, 98, 99, 100, 101, 105, 111, 116, 118, 122, 123, 125, 126, 128, 131, 134, 137, 138, 139, 141, 161, 162, 204, 208, 209, 217, 218, 219, 231, 234, 236, 237, 238, 240, 248, 250, 258, 263, 264, 273, 275, 276, 277, 278, 281, 282, 284, 288, 293, 296, 298, 299, 300, 301,

303, 304, 305, 307, 309, 310, 311, 312, 317, 320, 325, 329, 330, 331, 334, 336, 337, 338, 339, 340, 341, 345, 347, 348, 352, 354, 356, 357, 361, 365, 366, 370, 372, 374, 377, 380, 387, 390, 391, 394, 416, 417, 418, 419, 421, 422, 423, 424, 428, 429, 433, 441, 442, 443, 445, 446, 450, 451, 452, 457, 459, 469, 476, 477, 478, 484, 488, 490, 492, 495, 496, 497.

2.      All Documents and Communications, reviewed, relied upon, or consulted by Robert B. Heuchling as referenced in his verification of the Complaint, including but not limited to the "official files and records of the United States, publicly available files and historical information, information supplied [] by other law enforcement officers, experts, and other witnesses" referenced in the verification.

3.      All Documents comprising Communications from or to any Person identified or otherwise referenced in the Complaint, including but not limited to:

(a) "1MDB Officer 1"

(b) "1MDB Officer 2"

(c) "1MDB Officer 3"

(d) "Malaysian Official 1"

(e) Riza Shahriz Bin Abdul Aziz

(f) Eric Tan Kim Loong

(g) Khadem Abdulla Al Qubaisi

(h) Mohamed Ahmed Badawy Al-Husseiny

(i) "Goldman employees" referred to in Paragraph 36 and 37

(j) "Deutsche Bank Supervisor"

(k) "New York business person"

(l) Low Taek Jho

(m) Low Taek Szen.

(n) Low Hock Peng

(o) Li Lin Seet

(p) "Chairman of the 1MDB Board" referred to in Paragraph 47

(q) "1MDB's Director of Investments" referred to in Paragraph 47

(r) "three 1MDB Directors" referred to in Paragraph 47

(s) "1MDB's Chief Financial Officer" referred to in Paragraph 95

(t) "Former Chief Investment Officer of 1MDB" as referred to in Paragraph 225

(u) "PetroSaudi CEO"

(v) "Deutsche Bank Employee"

(w) "Acting Deputy Director of Bank Negara's Foreign Exchange Administration Department"

(x) "Bank Negara Official"

(y) "Deutsch Bank Compliance Officer" referred to in Paragraph 72

(z) "1MDB's Secretary" referred to in Paragraph 82

(aa) "PetroSaudi Co-Founder"

(bb) "Attorney General of Malaysia" referred to in Paragraph 102

(cc) "Goldman Managing Director"

(dd) "Red Granite Business Manager" referred to in Paragraph 209

(ee) Christopher "Joey" McFarland

(ff) "Hollywood Actor 1"

(gg) "Senior Vice President at Christie's" referred to in Paragraph 272

(hh) "Christie's Employee" referred to in Paragraphs 273 and 276

(ii) "California Realtor" referred to in Paragraph 309

(jj) "EMI Partner A" referred to in Paragraph 377

(kk) "EMI Partner B" referred to in Paragraph 377

(ll) "Sotheby's affiliate" referred to in Paragraph 445

(mm) "SNS employee" referred to in Paragraph 452

(nn) "Hong Kong Art Dealer" referenced in Paragraph 470 of the Amended Complaint filed in 16-cv-05366.

(oo) "Monaco Art Dealer" referenced in Paragraph 474 of the Amended
Complaint filed in 16-cv-05366.

(pp) The BSI Bank officials referenced in Paragraph 480 of the Amended
Complaint filed in 16-cv-05366.

4.    Documents sufficient to identify the name, home address, business
address(es), e-mail address(es), telephone number(s) and facsimile number(s) of
each individual identified by a pseudonym (or whose actual name is otherwise not
provided) in the Complaint, including but not limited to:

(a) "1MDB Officer 1"

(b) "1MDB Officer 2"

(c) "1MDB Officer 3"

(d) "Malaysian Official 1"

(e) "Goldman employees" referred to in Paragraph 36 and 37

(f) "Deutsche Bank Supervisor"

(g) "New York business person"

(h) "Chairman of the 1MDB Board" referred to in Paragraph 47

(i) "1MDB's Director of Investments" referred to in Paragraph 47

(j) "three 1MDB Directors" referred to in Paragraph 47

(k) "1MDB's Chief Financial Officer" referred to in Paragraph 95

(l) "Former Chief Investment Officer of 1MDB" as referred to in
Paragraph 225

(m) "PetroSaudi CEO"

(n) "Deutsche Bank Employee"

(o) "Acting Deputy Director of Bank Negara's Foreign Exchange
Administration Department"

(p) "Bank Negara Official"

(q) "Deutsch Bank Compliance Officer" referred to in Paragraph 72

(r) "1MDB's Secretary" referred to in Paragraph 82

(s) "PetroSaudi Co-Founder"

(t) "Attorney General of Malaysia" referred to in Paragraph 102

(u) "Goldman Managing Director"

(v) "Red Granite Business Manager" referred to in Paragraph 209

(w) "Hollywood Actor 1"

(x) "Senior Vice President at Christie's" referred to in Paragraph 272

(y) "Christie's Employee" referred to in Paragraph 276

(z) "California Realtor" referred to in Paragraph 309

(aa) "EMI Partner A" referred to in Paragraph 377

(bb) "EMI Partner B" referred to in Paragraph 377

(cc) "Sotheby's affiliate" referred to in Paragraph 445

(dd) "SNS employee" referred to in Paragraph 452

(ee) "Hong Kong Art Dealer" referenced in Paragraph 470 of the Amended Complaint filed in 16-cv-05366.

(ff) "Monaco Art Dealer" referenced in Paragraph 474 of the Amended Complaint filed in 16-cv-05366.

(gg) The BSI Bank officials referenced in Paragraph 480 of the Amended Complaint filed in 16-cv-05366.

5.      All notices, including but not limited to 18 U.S.C. § 983 notices, notices of seizure, notices of lis pendens, notices of action, and notices by publication, issued by Plaintiff regarding the Defendant Asset or any Subject Asset, including documents sufficient to identify all individuals or entities that were sent such notices.

6.      All Documents and Communications Concerning the purchase, sale, ownership and/or occupation of the Defendant Asset and the Subject Assets,

including all Documents and Communications Concerning any wire transfers used to purchase the Defendant and Subject Assets.

7.      All Documents and Communications Concerning all subpoenas, Mutual Legal Assistance Treaty ("MLAT") requests and/or other compulsory process requests issued in relation to the allegations set forth in the Complaint, including but not limited to the process itself and any communications concerning the process.

8.      All Documents and Communications obtained by Plaintiff pursuant to any subpoena or other compulsory process issued Concerning the subject matter alleged in the Complaint.

9.      All Documents and Communications obtained by Plaintiff pursuant to any mutual legal assistance treaty ("MLAT") request issued Concerning the subject matter alleged in the Complaint.

10.     All Document and Communications between You and Rothschild Trust (Schweiz) AG Concerning the allegations in the Complaint, the Defendant Asset, the Subject Assets, Low Taek Jho, Low May Lin, Low Hock Peng, Goh Gaik Ewe, Low Taek Szen, or One Universe Trust, including but not limited to any Documents or Communications provided to You by Rothschild Trust (Schweiz) AG.

11.     All Documents and Communications between You and Virtue Trustees (Switzerland) AG Concerning the allegations in the Complaint, the Defendant Asset, the Subject Assets, Low Taek Jho, Low May Lin, Low Hock Peng, Goh Gaik Ewe, or Low Taek Szen, including but not limited to any Documents or Communications provided to You by Virtue Trustees (Switzerland) AG.

12.     All Documents and Communications between You and Shearman & Sterling LLP Concerning the allegations in the Complaint, the Defendant Asset, the Subject Assets, Low Taek Jho, Low May Lin, Low Hock Peng, Goh Gaik Ewe, or Low Taek Szen,

13.    All discovery responses, including all interrogatory responses or documents produced in response to document requests, from any claimant in any of the Forfeiture Proceedings.

14.    All Documents provided to You by any third-party Concerning any of the allegations in the Complaint.

15.    All Documents and Communications Concerning the distribution of any assets or funds obtained through the forfeiture of the Defendant Asset, any Subject Asset or any substitute *res*, after conclusion of these proceedings, including but not limited to Documents and Communications Concerning any assertion that the assets and/or funds will be turned over to the Malaysian People, and any agreements or assurances by You that the assets and/or funds will be turned over to the Malaysian People.


DATED:  June 6, 2017            Ekwan E. Rhow
                                Jeremy D. Matz
                                Naeun Rim
                                Patricia H. Jun
                                Bird, Marella, Boxer, Wolpert, Nessim,
                                Drooks, Lincenberg & Rhow, P.C.



                        By:        /s/ Naeun Rim
                                _____
                                    Naeun Rim
                                Attorneys for Claimant LBH Real Estate
                                (Beverly Hills) LLC

## PROOF OF SERVICE

### Case No. 16-CV-5368-DSF (PLAx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

On June 6, 2017, I served the following document(s) described as **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address ale@birdmarella.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 6, 2017, at Los Angeles, California.

_/s/ Alicia Eastman_
Alicia Eastman

Exhibits A-C

40

**SERVICE LIST**
**Case No. 16-CV-5368-DSF (PLAx)**

John K. Kucera
U.S. Attorney
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Los Angeles, CA  90012
Telephone: (213) 894-3391 /6595
Facsimile: (213) 894-7177
Email: John.Kucera@usdoj.gov
**Counsel for United States of America**

Christen A. Sproule
Assistant United States Attorney
United States Courthouse
Asset Forfeiture Section
1400 United States Courthouse
312 N. Spring Street
Los Angeles, California  90012
Telephone: (213) 894-4493
Facsimile: (213) 894-7177
Email: christen.a.sproule@usdoj.gov
**Counsel for United States of America**

Kyle Renee Freeny
US Department of Justice
Criminal Division
1400 New York Avenue NW 10th Floor
Washington, DC  20005
Telephone: 202-616-2909
Facsimile: 202-616-2547
Email: kyle.freeny@usdoj.gov
**Counsel for United States of America**

Woo S. Lee
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10th Floor
Washington, CC  20530
Telephone: (202) 598-2249
Email: woo.lee@usdoj.gov
**Counsel for United States of America**

Andrea Duvall
Email: Andrea.Duvall@usdoj.gov
**Counsel for United States of America**

Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Jeremy D. Matz - State Bar No. 199401
    jmatz@birdmarella.com
Naeun Rim - State Bar No. 263558
    nrim@birdmarella.com
Patricia H. Jun - State Bar No. 277461
    pjun@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Claimants LBH Real Estate
(Beverly Hills) LLC, JW Hospitality
(VHG US) LLC and JW Hospitality (VHG
INTL) Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        vs.<br><br>ALL BUSINESS ASSETS OF THE VICEROY L'ERMITAGE BEVERLY HILLS, INCLUDING ALL CHATTELS AND INTANGIBLE ASSETS INVENTORY, EQUIPMENT, AND ALL LEASES, RENTS AND PROFITS DERIVED THEREFROM,<br><br>                Defendants. | CASE NO. 16-CV-5369-DSF (PLAx)<br><br>**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA**<br><br>Assigned to Hon. Dale S. Fischer |

**PROPOUNDING PARTY:**     **CLAIMANTS LBH REAL ESTATE**

                                               **(BEVERLY HILLS) LLC, JW HOSPITALITY**

                                               **(VHG US) LLC AND JW HOSPITALITY (VHG**

                                               **INTL) LTD.**

**RESPONDING PARTY:**     **PLAINTIFF UNITED STATES OF AMERICA**

**SET NO.:**                               **ONE**

Exhibits A-C                                                          42

Pursuant to Federal Rule of Civil Procedure ("FRCP") 34(a), Claimants LBH Real Estate (Beverly Hills) LLC, JW Hospitality (VHG US) LLC and JW Hospitality (VHG INTL) Ltd., by and through its undersigned counsel, hereby requests that Plaintiff United States of America ("Plaintiff") produce the documents requested herein, in accordance with all applicable Rules and the Definitions and Instructions set forth below, within thirty (30) days of service of these Requests.

Plaintiff is required to produce the requested documents for inspection or copying on or before July 6, 2017, at 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067.  In lieu of making a personal appearance on the production date, Defendant may append copies of the requested documents to its response to Claimants' Request for Production of Documents.

Pursuant to Rule 34(b)(2)(e) of the Federal Rules of Civil Procedure, Responding Party is obligated to produce responsive documents and electronically stored information as they are kept in the usual course of business and organize and label the documents to correspond to the categories in the request.

Each of the following requests for documents is continuing in nature, pursuant to Rule 26(e) of the FRCP.  Accordingly, if after producing any documents, Plaintiff, or anyone acting on Plaintiff's behalf, obtains or becomes aware of additional information or documents pertaining to any request herein, Plaintiff is requested to produce such information or documents.

## **DEFINITIONS**

1.      The term "Action" refers to this action, captioned *United States v. All Business Assets of the Viceroy L'Ermitage Beverly Hills,* 16-cv-05369 (DSF) (PLA) (C.D. Cal.).

2.      The term "Complaint" means the Verified Complaint for Forfeiture *In Rem* filed by Plaintiff on July 20, 2016 in the above-captioned Action.

3.      The term "Claimants" means LBH Real Estate (Beverly Hills) LLC, JW Hospitality (VHG US) LLC, and JW Hospitality (VHG INTL) Ltd.

4.      The terms "Plaintiff," and "You" or "Your" means the United States of America in any capacity, including, but not limited to, the Department of State, the Department of the Treasury, the Department of Justice, the Asset Forfeiture and Money Laundering Section of the Criminal Division of the Department of Justice, the U.S. Attorney's Office, the Federal Bureau of Investigation, and any of its employees, agents, attorneys, representatives, investigators, accountants, analysts and all other persons acting for or on behalf of Plaintiff or possessing documents or information for or on behalf of Plaintiff.

5.      The term "Defendant Asset" means the asset identified as such in the Complaint in this matter.

6.      The term "Subject Assets" means the assets identified in paragraph 4 of the Complaint.

7.      The term "Forfeiture Proceeding" means the following cases filed in the Central District of California: 2:16-cv-05362; 2:16-cv-05363; 2:16-cv-05364; 2:16-cv-05366; 2:16-cv-05367; 2:16-cv-05368; 2:16-cv-05369; 2:16-cv-05370; 2:16-cv-05371; 2:16-cv-05374; 2:16-cv-05375; 2:16-cv-05376; 2:16-cv-05377; 2:16-cv-05378; 2:16-cv-05379; 2:16-cv-05380.

8.      The terms "Document" or "Documents" have the broadest meaning accorded under the FRCP, and include all written, printed, typed, reported, recorded, pictorial, or graphic matter, however produced or reproduced, now or at the time of possession, custody, or control, including all letters, telegrams, telexes, e-mail transmission, cables, telephone records, notations, invoices, ledgers, Communications (defined below), journals, formal and informal books of record and account, logs, studies, summaries, minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs, instructions, financial statements, photographs, videotapes, microfilm, other film or tapes, reports, brochures,

publications, books, memoranda, notes, notebooks, drafts, worksheets, contracts, agreements, proposed contracts or agreements (whether or not actually consummated), computer data, computer printouts, interoffice memos, computer programs, computer software, tape recordings, transcriptions, drafts of the foregoing items, articles of newspapers, magazines, and other publications, purchase orders, lists, proposals, invoices, plans, specifications, addenda, statements, receipts, confirmation slips, evidence of payments, bills, diaries, calendars, Day Timers, time records, bills of lading, cancelled checks (both sides), audiotapes, and copies, reproductions, translations and original language versions of the foregoing upon which notations in writing have been made which do not appear in the originals.

9.     The terms "Communication" or "Communications"  mean, without limitation, every manner of transmitting, transferring, exchanging, or sharing information, facts, or thoughts in any form, whether orally, in writing, or otherwise, by any means whatsoever, including by oral communication, face-to-face meeting, memorandum, letter, note, mail, telephone, facsimile transmission, telecopy, e-mail, text, SMS or any form of instant messaging available on any electronic device including through WhatsApp or any other messaging software or application.

10.    The term "bank records" means, but is not limited to, original signature cards; document of account opening; documentation concerning account holders; account ledger cards; periodic account statements; records of all items deposited, withdrawn or transferred; records of wire transfers, including all instructions; authorizations, documents of dates, places, persons receiving the funds, and amount of monies transferred in or out; bank check purchases; documents supporting the purposes of a transaction; documentation of due diligence efforts or compliance reviews relating to the account including the know your customer ("KYC"), anti-money laundering ("AML"), and poetically exposed persons ("PEP"); communications to, from, or on behalf of the account holder, trustees and individuals holding signature authority or power of attorney; memoranda related to

the account; copies of electronic recordings of any conversations, including conversations relating to the transfer of money into or out of the account; and information regarding the contents of any safe deposit box opened in the name of or for the benefit of the account holder.

11.    The term "FD-302 Reports" means the reports used to summarize interviews conducted by the Federal Bureau of Investigation, including, but not limited to, the reports themselves, drafts of the reports and memoranda summarizing the contents of the reports.

12.    The term "Financial Institution" means a financial institution as defined under 31 U.S.C. §5312(a)(2).

13.    The term "Monetary Transaction" means a monetary transaction as defined under 18 U.S.C. § 1957(f)(1).

14.    The terms "Representative" or "Representatives" mean, without limitation, directors, officers, officials, agents, employees, partners, shareholders, members, servants, contractors, subcontractors, parent companies, subsidiaries, affiliates, attorneys, and any other persons or entities acting on behalf of a person.

15.    The terms "Person" or "Persons" mean, without limitation, any natural person, corporation, partnership, proprietorship, group, association, organization, firm, enterprise, contractor, business entity, governmental body, or agency, as well as any division, subdivision, bureau, office, or other unit thereof, or any representative of the foregoing.

16.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the request's scope.

17.    The term "Concerning" shall be given the broadest meaning possible, including relating to, referring to, reflecting, constituting, demonstrating, proving, and disproving.

18.     The terms "Identify," "Identity," and "Identification," when used with reference to a Person, mean to give, to the extent known, the Person's full name, present or last known residential and business address, present or last known place of employment, telephone number, email address, the capacity of such person, whether individual, partnership, corporation, agency or otherwise, and to the extent that such information is known to You or within Your possession or control, when the information provided refers to an organized entity, the place and date of the formation and identity of the responsible agency and officer, and   whether the Person is under Your control for purposes of Your ability to produce them for a deposition without the issuance of a subpoena.

19.     The terms "Identify," "Identity," and "Identification," when used with respect to Communications, mean to give, to the extent known: (i) the name of the Person making the Communication and the names of the Persons present while the Communication was made and, where not apparent, the relationship of the Person present to the Person making the Communication; (ii) the date and place of Communication; and (iii) the general subject matter of the Communication.

20.     The terms "Identify," "Identity," and "Identification," when used with respect to Document, mean to give, to the extent known: (i) the type of Document, (ii) its title, if any, (iii) a summary of its contents and subject matter, (iv) the date and place of its preparation, and (v) its author(s), addressee(s), and recipient(s).

21.     The terms "Identify," "Identity," and "Identification," when used with reference to an occasion or instance on which an event, act, or omission occurred, mean to state the date and place of such occasion or instance, to describe the nature of the event, act, or omission and to provide the identification of such Person involved in any way in such event, act, or omission.

22.     The terms  "Identify," "Identity," and "Identification" when used in reference to a Monetary Transaction, as defined below, mean to set forth, as applicable:

(a) the date, or dates, of the Monetary Transaction;

(b) the terms of the Monetary Transaction, including, but not limited to, the amount of the Monetary Transaction and the currency denomination of the Monetary Transaction;

(c) the name of each Person involved in the Monetary Transactions, including, but not limited to, the pay or and payee of the Monetary Transaction and the Person(s) authorizing the Monetary Transaction;

(d) the method of the Monetary Transaction (*i.e.*, check, cash, cashier's check, wire transfer, etc.);

(e) if the Monetary Transaction was executed by means of a transfer or payment of funds or property involving one or more Financial Institutions, the account name, account number, and name and location of the Financial Institution for any source and destination accounts involved in the Monetary Transaction;

(f) if the Monetary Transaction was by negotiable instrument, such as by check, the indorser of the instrument and the date the instrument was cashed or deposited; and

(g) any Documents that contain the terms of or otherwise evidence the transaction.

23.   For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests.

24.   Reference to any Person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

Exhibits A-C

25.     Reference to any Person or entity that is not otherwise defined shall have the same meaning as that ascribed to that Person or entity in the Complaint.

## **INSTRUCTIONS**

1.     Unless otherwise noted, the time period covered by this request shall be January 1, 2009 through and including the date of Plaintiff's response.

2.     This request calls for the production of all responsive documents in Your possession, custody, or control, or in the possession, custody, or control of Your employees, accountants, attorneys, agents, or all other Representatives acting on Your behalf, without regard to the physical location of such documents. Without limiting the term "control," a document is deemed to be within one's control if that person or entity has any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof.

3.     In responding to this request, produce all responsive documents prepared, forwarded, considered, or reviewed.

4.     In responding to this request, include documents obtained on Your behalf by Your counsel, employees, experts, agents, or any other persons acting on Your behalf.

5.     If Your response is that the documents are not within Your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document.

6.     If Your response is that the documents are not under Your control, identify who has control and the location of the documents.

7.     All requested documents shall be produced as they are kept in the regular course of business or shall be organized and labeled to correspond to the categories in this request.

8.     All requested documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container. A request for a document shall be deemed to include a request for any and

all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document, in addition to the document itself. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

9.     To the extent You are producing any electronic or computerized Documents in response to the Requests herein, including but not limited to videos and PowerPoint presentations, such Documents should be produced in their native format with all metadata intact.

10.     Each page of the documents produced in response to this request should be marked with a unique document identification Bates number.

11.     Any reference to a person that is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership ,or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, members, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries, and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

12.     Any documents or other items requested concerning a certain subject matter shall also include documents or other items tending to support, contradict, rebut, or relate to statements made and conclusions drawn concerning such subject matter.

13.     If any document is withheld, in whole or in part, for any reason, including a claim of privilege, whether work-product or attorney-client or other, set forth separately with respect to each such document:

  (a) the nature of the privilege claimed;

  (b) the type of document;

  (c) the general subject matter of the document;

  (d) the date of the document;

  (e) the authors of the document;

  (f) all persons who received or otherwise have seen copies of the document; and

  (g) such other information as is sufficient to enable an assessment of the applicability of the privilege or protection claimed.

14.     To the extent a document subject to an assertion of privilege, a work product claim, or other objection contains any responsive information not subject to such assertion or objection, the information must be produced. Claimed irrelevance is not a lawful basis for redacting or failing to produce part of a document the balance of which contains responsive material.

15.     For each document responsive to this request withheld in part for any reason, including the assertion of privilege, a work product claim, or other objection, indicate the portion of the document so withheld by stamping the words "MATERIAL REDACTED" on the document at an appropriate location on the document that does not obscure the remaining text.

16.     To the extent that there are no documents responsive to a particular request, you shall state so in writing.

## **REQUESTS FOR PRODUCTION**

1.      All Documents and Communications Concerning Your Request, reference number DOJ: 182-52274 including but not limited to all Documents and Communications produced in response to such request, and all interview or witness statements conducted, received, or produced in response to such request.

2.      All Documents and Communications Concerning Case Reference Number IRH2016003390, B 245 753 DOS.

3.      All Documents and Communications Concerning any requests to the Central Authority of Switzerland for assistance in the investigation of 1MDB, the Subject Assets, the Defendant Assets, One Universe Trust, and/or Low Taek Jho, including but not limited to any Documents or Communications provided to You in response to any such request.

4.      All witness statements, transcripts, memoranda, memoranda of interviews, FD-302 Reports, notes or video or audio recordings obtained by You Concerning the subject matter alleged in the Complaint.

5.      All Documents and Communications between You and with any other country or principality, including, but not limited to Malaysia, Seychelles, Switzerland, Singapore, Luxembourg, Hong Kong, France, the United Kingdom, Australia, the Cayman Islands, New Zealand, the British Virgin Islands, and the United Arab Emirates or any of their agents and Representatives, Concerning the allegations contained or referred to in the Complaint.

6.      All Documents and Communications Concerning any requests for assistance from the government of Malaysia or its agents and representatives to You to locate funds allegedly misappropriated from 1MDB, including any withdrawal of such requests.

7.      All Documents and Communications Concerning any requests from the government of Malaysia or its agents or representatives to You to initiate or consider initiating a forfeiture or other investigation or proceeding concerning funds

or proceeds allegedly obtained and transferred from 1MDB, including any withdrawal of such requests.

8.      All Documents and Communications between You and any reporter, journalist, or other person affiliated with any news publication, blog, or other media organization Concerning the subject matter alleged in the Complaint and/or this action.

9.      All non-prosecution agreements, deferred prosecution agreements, cooperation agreements, settlement agreements or any other agreements, including drafts and other unexecuted versions of any such agreements, You entered into, or considered entering into, with any Person who provided information in any way Concerning any of the allegations contained in the Complaint.

10.      All Documents and Communications Concerning the 1MDB Board meeting held on September 18, 2009.

11.      All Documents and Communications Concerning the Position Paper referenced in Paragraph 48 of the Complaint.

12.      All Documents and Communications Concerning the 1MDB Board meeting held on September 26, 2009.

13.      All Documents and Communications Concerning the 1MDB Board meeting held on October 3, 2009.

14.      All Documents and Communications Concerning the 1MDB Board meeting held on October 10, 2009.

15.      All Documents and Communications Concerning the Joint Venture Agreement referenced in Paragraph 52 of the Complaint, including any drafts, amendments, revisions, or addendums to the Joint Venture Agreement.

16.      All Citibank records and wire transfers Concerning the purchase or sale of the Defendant Asset or the Subject Assets.

17.      All Documents and Communications Concerning the regulatory filing referenced in Paragraph 78 of the Complaint.

18.     All Documents and Communications Concerning the Murabaha Financing Agreement referenced in Paragraph 92 of the Complaint.

19.     All Documents and Communications Concerning the "Notice of Drawing" referenced in Paragraph 93 of the Complaint.

20.     All Documents and Communications Concerning the May 23, 2011 letter referenced in Paragraph 95 of the Complaint.

21.     All Documents and Communications Concerning the May 25, 2011 letter referenced in Paragraph 96 of the Complaint.

22.     All Documents and Communications Concerning the May 27, 2011 letter of instructions referenced in Paragraph 98 of the Complaint.

23.     All Documents and Communications Concerning the March 2, 2012 Sale and Purchase Agreement entered into by 1MDB Energy Limited to acquire Tanjong Energy Holdings Sdn Bhd, referenced in Paragraph 122 of the Complaint.

24.     All Documents and Communications Concerning the Representation Agreement between IPIC and Goldman Sachs referenced in Paragraph 131 of the Complaint.

25.     All Documents and Communications Concerning the Interguarantor Agreement between 1MDB and IPIC dated May 21, 2012 referenced in Paragraph 131 of the Complaint.

26.     All Documents and Communications Concerning the document entitled "IPIC: Meeting with Ratings Agencies, Topics to Discuss" referenced in paragraph 132 of the Complaint.

27.     All Documents and Communications Concerning the May 18, 2012 Option Agreement between 1MDB Energy and Aabar BVI referenced in Paragraph 134 of the Complaint.

28.     All Documents and Communications Concerning 1MDB's August 13, 2012 "agreement to purchase power assets from Genting Berhad" as referenced in Paragraph 137 of the Complaint.

Exhibits A-C                                                54

29.     All Documents and Communications Concerning the October 17, 2012 "Collaboration Agreement (Option)" referenced in Paragraph 141 of the Complaint.

30.     All Documents and Communications Concerning the March 2013 presentation referenced in Paragraph 236 of the Complaint.

31.     All Documents and Communications Concerning the March 14, 2013 Letter of Support referenced in Paragraph 238 of the Complaint.


DATED:  June 6, 2017                   Ekwan E. Rhow
                                       Jeremy D. Matz
                                       Naeun Rim
                                       Patricia H. Jun
                                       Bird, Marella, Boxer, Wolpert, Nessim,
                                       Drooks, Lincenberg & Rhow, P.C.



                                       By:      /s/ Naeun Rim
                                       _____
                                                Naeun Rim
                                       Attorneys for Claimants LBH Real Estate
                                       (Beverly Hills) LLC, JW Hospitality (VHG
                                       US) LLC and JW Hospitality (VHG INTL)
                                       Ltd.

## PROOF OF SERVICE

### Case No. 16-CV-5369-DSF (PLAx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

On June 6, 2017, I served the following document(s) described as **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address ale@birdmarella.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 6, 2017, at Los Angeles, California.


*/s/ Alicia Eastman*
Alicia Eastman

## SERVICE LIST
### Case No. 16-CV-5369-DSF (PLAx)

John K. Kucera
U.S. Attorney
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Los Angeles, CA  90012
Telephone: (213) 894-3391 /6595
Facsimile: (213) 894-7177
Email: John.Kucera@usdoj.gov
**Counsel for United States of America**

Christen A. Sproule
Assistant United States Attorney
United States Courthouse
Asset Forfeiture Section
1400 United States Courthouse
312 N. Spring Street
Los Angeles, California  90012
Telephone: (213) 894-4493
Facsimile: (213) 894-7177
Email: christen.a.sproule@usdoj.gov
**Counsel for United States of America**

Kyle Renee Freeny
US Department of Justice
Criminal Division
1400 New York Avenue NW 10th Floor
Washington, DC  20005
Telephone: 202-616-2909
Facsimile: 202-616-2547
Email: kyle.freeny@usdoj.gov
**Counsel for United States of America**

Woo S.  Lee
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10th Floor
Washington, CC  20530
Telephone: (202) 598-2249
Email: woo.lee@usdoj.gov
**Counsel for United States of America**

Andrea Duvall
Email: Andrea.Duvall@usdoj.gov
**Counsel for United States of America**

Ekwan E. Rhow – State Bar No. 174604
   erhow@birdmarella.com
Jeremy D. Matz – State Bar No. 199401
   jmatz@birdmarella.com
Naeun Rim – State Bar No. 263558
   nrim@birdmarella.com
Patricia H. Jun – State Bar No. 277461
   pjun@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Claimant Oriole Drive (LA)
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:16-cv-5378-DSF-PLA |
| Plaintiff, | **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA** |
| vs. | |
| REAL PROPERTY LOCATED IN LOS ANGELES, CALIFORNIA, | Assigned to Hon. Dale S. Fischer |
| Defendant. | |
| ORIOLE DRIVE (LA) LLC, | |
| Titleholder. | |

**PROPOUNDING PARTY:**    **CLAIMANT ORIOLE DRIVE (LA) LLC**

**RESPONDING PARTY:**    **PLAINTIFF UNITED STATES OF AMERICA**

**SET NO.:**    **ONE**

Exhibits A-C

58

Pursuant to Federal Rule of Civil Procedure ("FRCP") 34(a), Claimant Oriole Drive (LA) LLC, by and through its undersigned counsel, hereby requests that Plaintiff United States of America ("Plaintiff") produce the documents requested herein, in accordance with all applicable Rules and the Definitions and Instructions set forth below, within thirty (30) days of service of these Requests.

Plaintiff is required to produce the requested documents for inspection or copying on or before July 6, 2017, at 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067. In lieu of making a personal appearance on the production date, Defendant may append copies of the requested documents to its response to Claimants' Request for Production of Documents.

Pursuant to Rule 34(b)(2)(e) of the Federal Rules of Civil Procedure, Responding Party is obligated to produce responsive documents and electronically stored information as they are kept in the usual course of business and organize and label the documents to correspond to the categories in the request.

Each of the following requests for documents is continuing in nature, pursuant to Rule 26(e) of the FRCP. Accordingly, if after producing any documents, Plaintiff, or anyone acting on Plaintiff's behalf, obtains or becomes aware of additional information or documents pertaining to any request herein, Plaintiff is requested to produce such information or documents.

## DEFINITIONS

1.     The term "Action" refers to this action, captioned *United States v. Real Property Located in Los Angeles, California*, 16-cv-05378 (DSF) (PLA) (C.D. Cal.).

2.     The term "Complaint" means the Verified Complaint for Forfeiture *In Rem* filed by Plaintiff on July 20, 2016 in the above-captioned Action.

3.     The term "Claimant" means Oriole Drive (LA) LLC.

4.     The terms "Plaintiff," and  "You" or "Your" means the United States of America in any capacity, including, but not limited to, the Department of State, the

Department of the Treasury, the Department of Justice, the Asset Forfeiture and Money Laundering Section of the Criminal Division of the Department of Justice, the U.S. Attorney's Office, the Federal Bureau of Investigation, and any of its employees, agents, attorneys, representatives, investigators, accountants, analysts and all other persons acting for or on behalf of Plaintiff or possessing documents or information for or on behalf of Plaintiff.

5.     The term "Defendant Asset" means the asset identified as such in the Complaint in this matter.

6.     The term "Subject Assets" means the assets identified in paragraph 4 of the Complaint.

7.     The term "Forfeiture Proceeding" means the following cases filed in the Central District of California: 2:16-cv-05362; 2:16-cv-05363; 2:16-cv-05364; 2:16-cv-05366;  2:16-cv-05367;  2:16-cv-05368;  2:16-cv-05369;  2:16-cv-05370; 2:16-cv-05371;  2:16-cv-05374;  2:16-cv-05375;  2:16-cv-05376;  2:16-cv-05377; 2:16-cv-05378; ; 2:16-cv-05379; 2:16-cv-05380.

8.     The term "1MDB" mean 1Malaysia Development Berhad and shall have the same meaning as that ascribed in Paragraph 17 of the Complaint.

9.     The term "PetroSaudi" or "PSI" means PetroSaudi International Ltd. and shall have the same meaning as that ascribed in Paragraph 18 of the Complaint.

10.    The term "1MDB PetroSaudi Ltd." means the joint venture between 1MDB and PetroSaudi formed in or around September 2009 and shall have the same meaning as that ascribed in Paragraph 19 of the Complaint.

11.    The term "IPIC" means International Petroleum Investment Company and shall have the same meaning as that ascribed in Paragraph 20 in the Complaint.

12.    "Aabar" means Aabar Investments PJS and shall have the same meaning as that ascribed in Paragraph 21 in the Complaint.

13.    "Aabar BVI" means Aabar Investments PJS Ltd. and shall have the same meaning as that ascribed in Paragraph 22 in the Complaint.

14.    "Jho Low" means Low Taek Jho.

15.    "1MDB Officer 1" shall have the same meaning as that ascribed in Paragraph 25 in the Complaint.

16.    "1MDB Officer 2" shall have the same meaning as that ascribed in Paragraph 26 in the Complaint.

17.    "1MDB Officer 3" shall have the same meaning as that ascribed in Paragraph 27 in the Complaint.

18.    "Malaysian Official 1" shall have the same meaning as that ascribed in Paragraph 28 in the Complaint.

19.    "Aziz" means Riza Shahriz Bin Abdul Aziz as referred to in Paragraph 29 of the Complaint.

20.    "Tan" means Tan Kim Loong as referred to in Paragraph 30 of the Complaint.

21.    "Qubaisi" means Khadem Abdulla Al Qubaisi as referred to in Paragraph 31 of the Complaint.

22.    "Husseiny" means Mohamed Ahmed Badawy Al-Husseiny as referred to in Paragraph 32 of the Complaint.

23.    "Singapore Banker 1" shall have the same meaning as that ascribed in the Complaint.

24.    "Good Star Account" means the bank account at RBS Coutts in Zurich held in the name of Good Star Limited and shall have the same meaning as that ascribed in Paragraph 41 of the Complaint.

25.    "Good Star" means Good Star Limited.

26.    "PetroSaudi CEO" shall have the same meaning as that ascribed in the Complaint.

27.    "PetroSaudi Co-Founder" shall have the same meaning as that ascribed in the Complaint.

28.    "ADKMIC BSI Account" shall have the same meaning as that ascribed in Paragraph 109 of the Complaint.

29.    "ADKMIC"    means    Abu    Dhabi-Kuwait-Malaysia    Investment Corporation.

30.    The terms "Document" or "Documents" have the broadest meaning accorded under the FRCP,   and include all written, printed, typed, reported, recorded, pictorial, or graphic matter, however produced or reproduced, now or at the time of possession, custody, or control, including all letters, telegrams, telexes, e-mail transmission, cables, telephone records, notations, invoices, ledgers, Communications (defined below), journals, formal and informal books of record and account, logs, studies, summaries, minutes, agendas, bulletins, notices, announcements, charts, manuals, models, graphs, instructions, financial statements, photographs, videotapes, microfilm, other film or tapes, reports, brochures, publications, books, memoranda, notes, notebooks, drafts, worksheets, contracts, agreements, proposed contracts or agreements (whether or not actually consummated), computer data, computer printouts, interoffice memos, computer programs, computer software, tape recordings, transcriptions, drafts of the foregoing items, articles of newspapers, magazines, and other publications, purchase orders, lists, proposals, invoices, plans, specifications, addenda, statements, receipts, confirmation slips, evidence of payments, bills, diaries, calendars, Day Timers, time records, bills of lading, cancelled checks (both sides), audiotapes, and copies, reproductions, translations and original language versions of the foregoing upon which notations in writing have been made which do not appear in the originals.

31.    The terms "Communication" or "Communications"   mean, without limitation, every manner of transmitting, transferring, exchanging, or sharing information, facts, or thoughts in any form, whether orally, in writing, or otherwise, by any means whatsoever, including by oral communication, face-to-face meeting, memorandum, letter, note, mail, telephone, facsimile transmission, telecopy, e-mail,

text, SMS or any form of instant messaging available on any electronic device including through WhatsApp or any other messaging software or application.

32.    The term "bank records" or "banking records" means, but is not limited to, original signature cards; document of account opening; documentation concerning account holders; account ledger cards; periodic account statements; records of all items deposited, withdrawn or transferred; records of wire transfers, including all instructions; authorizations, documents of dates, places, persons receiving the funds, and amount of monies transferred in or out; bank check purchases; documents supporting the purposes of a transaction; documentation of due diligence efforts or compliance reviews relating to the account including the know your customer ("KYC"), anti-money laundering ("AML"), and poetically exposed persons ("PEP"); communications to, from, or on behalf of the account holder, trustees and individuals holding signature authority or power of attorney; memoranda related to the account; copies of electronic recordings of any conversations, including conversations relating to the transfer of money into or out of the account; and information regarding the contents of any safe deposit box opened in the name of or for the benefit of the account holder.

33.    The term "FD-302 Reports" means the reports used to summarize interviews conducted by the Federal Bureau of Investigation, including, but not limited to, the reports themselves, drafts of the reports and memoranda summarizing the contents of the reports.

34.    The term "Financial Institution" means a financial institution as defined under 31 U.S.C. §5312(a)(2).

35.    The term "Monetary Transaction" means a monetary transaction as defined under 18 U.S.C. § 1957(f)(1).

36.    The terms "Representative" or "Representatives" mean, without limitation, directors, officers, officials, agents, employees, partners, shareholders,

members, servants, contractors, subcontractors, parent companies, subsidiaries, affiliates, attorneys, and any other persons or entities acting on behalf of a person.

37.    The terms "Person" or "Persons" mean, without limitation, any natural person, corporation, partnership, proprietorship, group, association, organization, firm, enterprise, contractor, business entity, governmental body, or agency, as well as any division, subdivision, bureau, office, or other unit thereof, or any representative of the foregoing.

38.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the request's scope.

39.    The term "Concerning" shall be given the broadest meaning possible, including relating to, referring to, reflecting, constituting, demonstrating, supporting, proving, and disproving.

40.    The terms "Identify," "Identity," and "Identification," when used with reference to a Person, mean to give, to the extent known, the Person's full name, present or last known residential and business address, present or last known place of employment, telephone number, email address, the capacity of such person, whether individual, partnership, corporation, agency or otherwise, and to the extent that such information is known to You or within Your possession or control, when the information provided refers to an organized entity, the place and date of the formation and identity of the responsible agency and officer, and  whether the Person is under Your control for purposes of Your ability to produce them for a deposition without the issuance of a subpoena.

41.    The terms "Identify," "Identity," and "Identification," when used with respect to Communications, mean to give, to the extent known: (i) the name of the Person making the Communication and the names of the Persons present while the Communication was made and, where not apparent, the relationship of the Person

present to the Person making the Communication; (ii) the date and place of Communication; and (iii) the general subject matter of the Communication.

42.     The terms "Identify," "Identity," and "Identification," when used with respect to a Document, mean to give, to the extent known: (i) the type of Document, (ii) its title, if any, (iii) a summary of its contents and subject matter, (iv) the date and place of its preparation, and (v) its author(s), addressee(s), and recipient(s).

43.     The terms "Identify," "Identity," and "Identification," when used with reference to an occasion or instance on which an event, act, or omission occurred, mean to state the date and place of such occasion or instance, to describe the nature of the event, act, or omission and to provide the identification of such Person involved in any way in such event, act, or omission.

44.     The terms  "Identify," "Identity," and "Identification" when used in reference to a Monetary Transaction, as defined below, mean to set forth, as applicable:

(a) the date, or dates, of the Monetary Transaction;

(b) the terms of the Monetary Transaction, including, but not limited to, the amount of the Monetary Transaction and the currency denomination of the Monetary Transaction;

(c) the name of each Person involved in the Monetary Transactions, including, but not limited to, the pay or and payee of the Monetary Transaction and the Person(s) authorizing the Monetary Transaction;

(d) the method of the Monetary Transaction (*i.e.*, check, cash, cashier's check, wire transfer, etc.);

(e) if the Monetary Transaction was executed by means of a transfer or payment of funds or property involving one or more Financial Institutions, the account name, account number, and name and location of the Financial Institution for any source and destination accounts involved in the Monetary Transaction;

(f) if the Monetary Transaction was by negotiable instrument, such as by check, the indorser of the instrument and the date the instrument was cashed or deposited; and

(g) any Documents that contain the terms of or otherwise evidence the transaction.

45.   For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests.

46.   Reference to any Person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

47.   Reference to any Person or entity that is not otherwise defined shall have the same meaning as that ascribed to that Person or entity in the Complaint.

## **INSTRUCTIONS**

1.   Unless otherwise noted, the time period covered by this request shall be January 1, 2009 through and including the date of Plaintiff's response.

2.   This request calls for the production of all responsive documents in Your possession, custody, or control, or in the possession, custody, or control of Your employees, accountants, attorneys, agents, or all other Representatives acting on Your behalf, without regard to the physical location of such documents. Without limiting the term "control," a document is deemed to be within one's control if that person or entity has any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof.

3.   In responding to this request, produce all responsive documents prepared, forwarded, considered, or reviewed.

Exhibits A-C

66

4.     In responding to this request, include documents obtained on Your behalf by Your counsel, employees, experts, agents, or any other persons acting on Your behalf.

5.     If Your response is that the documents are not within Your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document.

6.     If Your response is that the documents are not under Your control, identify who has control and the location of the documents.

7.     All requested documents shall be produced as they are kept in the regular course of business or shall be organized and labeled to correspond to the categories in this request.

8.     All requested documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container. A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document, in addition to the document itself. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

9.     To the extent You are producing any electronic or computerized Documents in response to the Requests herein, including but not limited to videos and PowerPoint presentations, such Documents should be produced in their native format with all metadata intact.

10.     Each page of the documents produced in response to this request should be marked with a unique document identification Bates number.

11.     Any reference to a person that is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership ,or any other

artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, members, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries, and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

12.   Any documents or other items requested concerning a certain subject matter shall also include documents or other items tending to support, contradict, rebut, or relate to statements made and conclusions drawn concerning such subject matter.

13.   If any document is withheld, in whole or in part, for any reason, including a claim of privilege, whether work-product or attorney-client or other, set forth separately with respect to each such document:

(a) the nature of the privilege claimed;

(b) the type of document;

(c) the general subject matter of the document;

(d) the date of the document;

(e) the authors of the document;

(f) all persons who received or otherwise have seen copies of the document; and

(g) such other information as is sufficient to enable an assessment of the applicability of the privilege or protection claimed.

14.   To the extent a document subject to an assertion of privilege, a work product claim, or other objection contains any responsive information not subject to such assertion or objection, the information must be produced. Claimed irrelevance

is not a lawful basis for redacting or failing to produce part of a document the balance of which contains responsive material.

15.    For each document responsive to this request withheld in part for any reason, including the assertion of privilege, a work product claim, or other objection, indicate the portion of the document so withheld by stamping the words "MATERIAL REDACTED" on the document at an appropriate location on the document that does not obscure the remaining text.

16.    To the extent that there are no documents responsive to a particular request, you shall state so in writing.

17.    This request is continuing, and Your response to this request must be promptly supplemented when appropriate or necessary.

## REQUESTS FOR PRODUCTION

1.    All Documents and Communications between or among Low Taek Jho, 1MDB Officer 1, 1MDB Officer 2, 1MDB Officer 3, Malaysian Official 1, Singapore Banker 1, and any employees of Goldman Sachs, Aabar and/or IPIC.

2.    All Documents and Communications Concerning "Project TIARA" including but not limited to the "Electronic Communications" as referenced in paragraph 36 of the Complaint.

3.    All Documents and Communications Concerning the formation of 1MDB PetroSaudi Ltd.

4.    All Documents and Communications Concerning "certain energy concession rights in Turkmenistan and Argentina" as referenced in Paragraph 40 of the Complaint including, but not limited to, any documents evidencing the existence of such rights and any valuations of those energy concession rights.

5.    All Documents and Communications Concerning the transfer of $1 billion by 1MDB for the Joint Venture 1MDB PetroSaudi Ltd., including but not limited to any Documents, Communications, or banking records regarding the approval of the transfer or evidencing the existence of the transfer.

6.      All Documents and Communications Concerning the account at RBS Coutts Bank in Zurich held in the name of Good Star Limited, including but not limited to any Documents and Communications Concerning the opening of the account, any deposits, withdrawals, or transfers from or to the account, the maintenance or ownership of the account, the closing of the account.

7.      All Documents and Communications Concerning Good Star Limited.

8.      All Documents and Communications Concerning the "banking records" referenced in paragraph 43 of the Complaint.

9.      All Documents and Communications Concerning the nature of Smart Power's relationship with Good Star Limited, as referenced in paragraph 44 of the Complaint.

10.      All Documents and Communications Concerning Singapore Banker 1.

11.      All 1MDB Board minutes and/or 1MDB Board resolutions.

12.      All Documents and Communications Concerning 1MDB Board minutes and/or 1MDB Board resolutions.

13.      All Documents and Communications Concerning 1MDB's Articles of Association.

14.      All Documents and Communications Concerning the allegation in the Complaint that "just prior" to the September 26, 2009 1MDB Board meeting "Low spoke by telephone with Malaysian Official 1" as referenced in Paragraph 50 of the Complaint.

15.      All Documents and Communications Concerning the "loan" referenced in paragraphs 54-56 of the Complaint.

16.      All Documents and Communications, including all banking records, Concerning the bank account maintained by 1MDB PetroSaudi Ltd. at J.P. Morgan (Suisse) as referenced in Paragraph 56(b) of the Complaint.

17.     All Documents and Communications, including all banking records, Concerning the bank account opened by PetroSaudi at J.P. Morgan (Suisse) in June 2009 as referenced in Paragraph 56(c) of the Complaint.

18.     All Documents and Communications Concerning the Malaysian Public Accounts Committee's examination of 1MDB, including but not limited to both the public and non-public reports referred to in Paragraph 56(d) and Paragraph 160 of the Complaint.

19.     All Documents and Communications Concerning the September 30, 2009 letter signed by 1MDB Officer 1 as referenced in Paragraph 60 of the Complaint.

20.     All Documents and Communications Concerning the purported "material misrepresentations and omissions to Deutsche Bank" referenced in paragraph 59 of the Complaint.

21.     All J.P. Morgan Chase Bank records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, Malaysian Official 1, the PetroSaudi CEO, PetroSaudi Co-Founder, or any other subject matter referenced in the Complaint.

22.     All J.P. Morgan correspondent bank records, Documents, and Communications  Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, Malaysian Official 1, the PetroSaudi CEO, PetroSaudi Co-Founder, the ADKMIC BSI Account, the Dragon Market Account, the Dragon Dynasty Account, or any other subject matter referenced in the Complaint.

23.     All Deutsche Bank records, records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, or any other subject matter referenced in the Complaint.

24.     All RBS Coutts bank records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, or any other subject matter referenced in the Complaint.

25.     All BSI Bank records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, or any other subject matter referenced in the Complaint.

26.     All Bank Negara records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, or any other subject matter referenced in the Complaint.

27.     All AmBank records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, PetroSaudi, Malaysian Official 1, the PetroSaudi CEO, the PetroSaudi Co-Founder, or any other subject matter referenced in the Complaint.

28.     All Riyad Bank records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, Petro Saudi, Malaysian Official 1, the PetroSaudi CEO, the PetroSaudi Co-Founder, or any other subject matter referenced in the Complaint.

29.     All Wells Fargo records, Documents, and Communications Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, Petro Saudi, Malaysian Official 1, the PetroSaudi CEO, PetroSaudi Co-Founder, the Bombardier Jet, the Park Lane Partnership or any other subject matter or asset referenced in the Complaint.

30.     All Documents, Communications, or BSI Bank records, Concerning the ADKMIC BSI Account referenced in Paragraph 109 of the Complaint.

31.     All Documents, Communications, or records, Concerning the account at Falcon Private Bank Limited referenced in Paragraph 145 of the Complaint.

32.     All Documents, Communications or BSI Bank records Concerning the accounts held in the name of Aabar-BVI referenced in Paragraphs 143 or 146 of the Complaint.

Exhibits A-C

33.     All Documents, Communications, or bank records Concerning the Singapore bank account held by Blackstone Asia Real Estate Partners referenced in Paragraph 118 of the Complaint.

34.     All Documents, Communications, or bank records Concerning the bank account at ING Bank N.V. in Amsterdam belonging to Enterprise Emerging Markets Fund referenced in Paragraph 173 of the Complaint.

35.     All Documents, Communications, or bank records Concerning the bank account at ING Bank N.V. in Amsterdam belonging to Cistenique Investment Fund.

36.     All Documents, Communications or bank records Concerning the account at Standard Chartered Bank in Singapore held in the name of Blackstone Asia Real Estate Partners referenced in Paragraph 167 of the Complaint.

37.     All bank records, Documents, and Communications Concerning the Aabar-BVI Swiss Account as referenced in Paragraph 118 of the Complaint.

38.     All bank records, Documents, and Communications Concerning the Aabar-BVI BSI Lugano in Switzerland account referenced in Paragraph 471 of the Complaint.

39.     All bank records, Documents, and Communications Concerning the account held at Bank of New York Mellon-New York referenced in Paragraph 145 of the Complaint.

40.     All bank records, Documents, and Communications Concerning the account held at Falcon Private Bank Limited in the name of 1MDB Energy Limited referenced in Paragraph 146 of the Complaint.

41.     All bank records, Documents, and Communications Concerning the Tanore Account held at Falcon Bank in Singapore referenced in Paragraph 241 of the Complaint.

42.     All bank records, Documents, and Communications Concerning the account opened in the name of Granton Property Holdings Limited at Falcon Bank referenced in Paragraph 241 of the Complaint.

43.     All bank records, Documents, and Communications Concerning the BSI account of 1MDB Global referenced in Paragraph 244 of the Complaint.

44.     All bank records, Documents, and Communications Concerning the correspondent bank accounts held at J.P Morgan Chase, Citibank, or Standard Chartered Bank referenced in Paragraphs 146, 150, 152, 167, 181, 187, 247, 251, 300, 303, 325, 378, 387, 405, 406, 467  of the Complaint.

45.     All bank records, Documents, and Communications Concerning the "two accounts beneficially owned by Husseiny" referenced in Paragraph 119 of the Complaint.

46.     All bank records, Documents, and Communications Concerning the "Luxembourg account beneficially owned by Qubaisi" referenced in Paragraph 119 of the Complaint.

47.     All bank records, Documents, and Communications Concerning the "account belonging to Malaysian Official 1" referenced in Paragraph 119 of the Complaint.

48.     All bank records, Documents, and Communications Concerning the "Swiss account beneficially owned by 1MDB Officer 3" referenced in Paragraph 119 of the Complaint.

49.     All bank records, Documents, and Communications Concerning the "Singapore bank account belonging to Red Granite Capital" referenced in Paragraph 120 of the Complaint.

50.     All bank records, Documents, and Communications Concerning the account at BSI Singapore held in the name of Red Granite Capital Limited referenced in Paragraph 203 of the Complaint.

51.     All bank records, Documents, and Communications Concerning the account at Bank Privee Edmond de Rothschild in Luxembourg maintained in the name of Vasco Investments Services SA referenced in Paragraph 181 of the Complaint.

52. All bank records, Documents, and Communications Concerning the account at BHF Bank in Frankfurt, Germany held in the name of Rayan, Inc. referenced in Paragraph 187 of the Complaint.

53. All bank records, Documents, and Communications Concerning the account at Bank of America in Texas held in the name of MB Consulting LLC referenced in Paragraph 190 of the Complaint.

54. All bank records, Documents, and Communications Concerning the account at Falcon Bank in Zurich maintained in the name of River Dee International SA referenced in Paragraph 197 of the Complaint.

55. All bank records, Documents, and Communications Concerning the account at City National Bank in the United States maintained by Red Granite Pictures referenced in Paragraph 214 of the Complaint.

56. All bank records, Documents, and Communications Concerning the account at Standard Chartered Bank in Singapore held in the name of Alsen Chance Holdings Limited referenced in Paragraph 220 of the Complaint.

57. All bank records, Documents, and Communications Concerning the AmBank account referenced in Paragraph 262 of the Complaint.

58. All bank records, Documents, and Communications Concerning "Low's personal account at BSI Bank in Singapore" referenced in Paragraph 321 of the Complaint.

59. All bank records, Documents, and Communications Concerning the account at BSI Bank held in the name of Low Hock Peng, a/k/a Larry Low referenced in Paragraph 346 of the Complaint.

60. All bank records, Documents, and Communications Concerning the "account in Low's name at BSI Bank" referenced in Paragraph 355 of the Complaint.

61.     All bank records, Documents, and Communications Concerning the account in the name of Selune Ltd. at Rothschild Bank AG in Switzerland referenced in Paragraph 346 or 356 of the Complaint.

62.     All bank records, Documents, and Communications Concerning the account at Rothschild Bank AG in the name of 1/Oriole Drive (LA) LLC referenced in Paragraph 357 of the Complaint.

63.     All bank records, Documents, and Communications Concerning the account at Citibank in the name of DLA Piper referenced in Paragraph 361 of the Complaint.

64.     All bank records, Documents, and Communications Concerning the IOLA account at Citibank maintained by DLA Piper referenced in Paragraph 410 of the Complaint.

65.     All bank records, Documents, and Communications Concerning the Low EMI Partner bank account at Bank of New York Mellon referenced in Paragraph 374 of the Complaint.

66.     All bank records, Documents, and Communications Concerning the Low EMI Partner bank account at BSI referenced in Paragraph 379 of the Complaint.

67.     All bank records, Documents, and Communications Concerning the Jynwel Account A referenced in Paragraph 379 of the Complaint.

68.     All bank records, Documents, and Communications Concerning the Jynwel Account B referenced in Paragraph 379 of the Complaint.

69.     All bank records, Documents, and Communications Concerning the EMI Escrow Account referenced in Paragraph 380 of the Complaint.

70.     All bank records, Documents, and Communications Concerning the account at First Gulf Bank in the name of Mubadala Treasury Holding Co. LLC referenced in Paragraph 381 of the Complaint.

71.     All bank records, Documents, and Communications Concerning the City National Bank Operating Account for Red Granite Pictures referenced in Paragraph 387.

72.     All bank records, Documents, and Communications Concerning the City National Bank account held in the name of Red Granite Pictures referenced in Paragraph 389 of the Complaint.

73.     All bank records, Documents, and Communications Concerning the City National Bank account held in the name of TWOWS LLC referenced in Paragraph 389 of the Complaint.

74.     All bank records, Documents, and Communications Concerning the City National Bank account held in the name of TWOWS LLC referenced in Paragraph 391 of the Complaint.

75.     All bank records, Documents, and Communications Concerning the account at RBS Coutts in Switzerland held in the name of Dragon Market Limited referenced in Paragraph 405 of the Complaint

76.     All bank records, Documents, and Communications Concerning the account at BSI Bank in Singapore held in the name of Dragon Dynasty Limited referenced in Paragraph 406 of the Complaint.

77.     All bank records, Documents, and Communications Concerning the BSI Bank in Singapore account belonging to Low Taek Szen referenced in Paragraph 409 of the Complaint.

78.     All bank records, Documents, and Communications Concerning the account at J.P. Morgan Chase in the name of Commonwealth Land Title Insurance Company referenced in Paragraph 422 of the Complaint.

79.     All bank records, Documents, and Communications Concerning the account held in Low's name at Amicorp Bank and Trust in Hong Kong referenced in Paragraph 426 of the Complaint.

80.     All bank records, Documents, and Communications Concerning the account held by Symphony CP Investments LLC referenced in Paragraph 426 of the Complaint.

81.     All bank records, Documents, and Communications Concerning the account held by the Park Lane Partnership referenced in Paragraph 426 of the Complaint.

82.     All bank records, Documents, and Communications Concerning the account at Caledonia Bank Ltd held in the name of Triple Eight Ltd. referenced in Paragraph 446 of the Complaint.

83.     All bank records, Documents, and Communications Concerning the account at J.P. Morgan Chase held in the name of SNS Fine Arts referenced in Paragraph 456 of the Complaint.

84.     All bank records, Documents, and Communications Concerning the account at Banque Federale de Commerce, S.A. in Comoros referenced in Paragraph 471 of the Amended Complaint filed in 16-cv-05366.

85.     All bank records, Documents, and Communications Concerning the UBS Bank, SA account referenced in Paragraph 470 of the Amended Complaint filed in 16-cv-05366.

86.     All bank records, Documents, and Communications Concerning the account in the name of TKIL Capital Partners Ltd. at AmiCorp Bank referenced in footnote 19 of the Complaint.

87.     All Moroccan Foreign Trade Bank International, S.A., bank records Concerning the Hong Kong Art Dealer, Low Taek Jho, or the purchase of the Petit Nympheas Painting.

88.     All bank records, Documents, and Communications Concerning the account at Julius Baer Bank in Switzerland in the name of the Monaco Art Dealer referenced in Paragraph 478 of the Amended Complaint filed in 16-cv-05366.

89.   All bank records, Documents, and Communications Concerning the account at Citibank in United States in the name of Greenberg Traurig referenced in Paragraph 474 of the Complaint.

90.   All bank records, Documents, and Communications Concerning the account at J.P. Morgan Chase in the name of Neil Moffitt referenced in Paragraph 479 of the Complaint.

91.   All bank records, Documents, and Communications Concerning the account at Falcon Bank in Switzerland in the name of Qubaisi referenced in Paragraph 492 of the Amended Complaint filed in 16-cv-05366.

92.   All bank records, Documents, and Communications Concerning the account at Chase Manhattan Bank in the name of Escrow of the West referenced in Paragraph 492 of the Amended Complaint filed in 16-cv-05366.

93.   All bank records, Documents, and Communications Concerning the account at City National Bank in the name of Escrow of the West referenced in Paragraph 493 of the Amended Complaint filed in 16-cv-05366.

94.   All bank records, Documents, and Communications Concerning the account at First America Trust F.F.B. in the name of First American Title Company referenced in Paragraph 486 of the Complaint.

95.   All Documents and Communications Concerning the AMPRIVATE BANKING-MR Account referenced in Paragraphs 101, 194, 196 and 229 of the Complaint including but not limited to all banking records, deposits, transfers, or wires to or from that account, including those referenced in Table 2 of Paragraph 101 of the Complaint.

96.   All Documents and Communications Concerning the allegation that "Malaysian Official 1 is the ultimate beneficiary of the AMPRIVATE BANKING-MR Account" as referenced in Paragraph 102 of the Complaint.

97.    All Documents and Communications Concerning the September 30, 2009 email from a 1MDB official to a Deutsche Bank employee referenced in Paragraph 64 of the Complaint.

98.    All Documents and Communications Concerning the September 30, 2009 letter from the Acting Deputy Director of Bank Negara's Foreign Exchange Administration Department to 1MDB Officer 1 referenced in Paragraph 65 of the Complaint.

99.    All Communications between any employee, executive, official, agent, contractor, or board member of 1MDB and Deutsche Bank Concerning 1MDB PetroSaudi Ltd., Good Star, or the Good Star Account.

100.    All Documents and Communications Concerning the communications referenced in Paragraphs 64-78 of the Complaint allegedly involving 1MDB Officer 1, 1MDB Officer 2, other 1MDB officials, and employees of Deutsche Bank, Bank Negara, and RBS Coutts, including any transcripts or audio recordings of the conversations referenced in Paragraphs 64-76 of the Complaint.

101.    All Documents and Communications Concerning the allegation in Paragraph 69 of the Complaint that "[w]hen the Bank Negara Official used the words 'original intention' he/she meant the $1 billion in funds that were meant to be sent to the 1MDB-PetroSaudi JV."

102.    All Society for Worldwide Interbank Financial Telecommunication payment orders, messages, Communications, clarifications, revisions, or records Concerning 1MDB, 1MDB PetroSaudi Ltd., Good Star, the Good Star Account, the Tanore Account, or PetroSaudi including but not limited to those referenced at Paragraphs 70, 71, 74, 76, 77, 96, 244, 258, 457 of the Complaint and Paragraph 478 of the Amended Complaint filed in 16-cv-05366.

103.    All Documents and Communications Concerning the purported "material misrepresentations to the 1MDB Board" referenced in paragraph 81 of the Complaint.

104.    All Documents and Communications Concerning the purported "false pretenses" referenced in paragraph 91 of the Complaint.

105.    All Documents and Communications Concerning the transfers referenced in Table 1 of Paragraph 94 of the Complaint.

106.    All Documents and Communications, including bank records, Concerning the bank account at Riyad Bank maintained in the name of a Saudi Prince as referenced in Paragraph 99 of the Complaint.

107.    All Documents and Communications Concerning the Shearman & Sterling LLP Interest on Lawyer Account referenced in the Complaint, including all Documents and Communications Concerning any deposits, wires, or transfers to or from the Shearman & Sterling LLP Interest on Lawyer Account Concerning the Defendant Asset or any of the Subject Assets.

108.    All Documents and Communications Concerning the client escrow accounts referred to in footnote 10 of the Complaint.

109.    All Documents and Communications Concerning the "bank records" referenced in Paragraph 105 of the Complaint.

110.    All Documents, Communications and bank records Concerning the transfers described in Paragraphs 107 – 108 of the Complaint.

111.    All Documents and Communications Concerning the "New York business person" referenced in Paragraph 110 of the Complaint, including but not limited to the August 13, 2013 email and the document entitled "Low family history and background, origins of Jynwel Capital" referenced in Paragraphs 110, 297, and 377 of the Complaint.

112.    All Documents and Communications Concerning Abu Dhabi-Kuwait-Malaysia Investment Corporation.

113.    All Documents, Communications and bank records Concerning the transfers referenced in Table 4 of Paragraph 111 of the Complaint.

114.   All Documents and Communications Concerning the purported "material representations and omissions" referenced in Paragraph 112 of the Complaint.

115.   All Documents and Communications Concerning IPIC's audited financial statements as referenced in Paragraph 116 and Paragraph 164 of the Complaint.

116.   All Documents and Communications Concerning the dismissal of Qubaisi and/or Husseiny from their positions at IPIC and Aabar.

117.   All Documents and Communications Concerning the relationship or affiliation, or lack thereof, between Aabar and Aabar BVI.

118.   All Documents and Communications Concerning Aabar BVI.

119.   All Documents and Communications Concerning Blackstone Asia Real Estate Partners.

120.   All Documents and Communications Concerning 1MDB Energy Limited.

121.   All Documents and Communications Concerning "officials at 1MDB approach[ing] Goldman for financial advice in connection with 1MDB's anticipated acquisition of certain power assets in Malaysia."

122.   All Documents and Communications Concerning Goldman Sachs' involvement in the "two separate bond offerings in 2012" referenced in paragraph 113 of the Complaint.

123.   All Documents and Communications Concerning 1MDB's engagement of Goldman Sachs for debt financing in connection with the Tanjong acquisition including but not limited to a letter dated March 19, 2012 as referenced in Paragraph 123 of the Complaint.

124.   All Documents and Communications Concerning Project Magnolia or the May 21, 2012 bond offering.

125.   All Documents and Communications between 1MDB employees and Goldman Sachs employees Concerning "Project Magnolia" and/or the May 21, 2012 bond offering.

126.   All Documents and Communications between and among Goldman Sachs employees Concerning the May 21, 2012 bond offering referenced in Paragraphs 112-134 of the Complaint, including but not limited to the Documents and Communications referenced in Paragraphs 125 and 128 of the Complaint.

127.   All Documents and Communications Concerning Low's alleged involvement with 1MDB, Project Magnolia, the May 21, 2012 bond offering, or the IPIC guarantee referenced in Paragraph 125 of the Complaint.

128.   All Documents and Communications Concerning the meeting in Abu Dhabi between the Goldman Managing Director and the Chairman of IPIC referenced in paragraph 125(b) of the Complaint.

129.   All Documents and Communications Concerning the offering circular for the May 21, 2012 bond offering.

130.   All Documents and Communications Concerning Goldman Sachs's fees referenced in Paragraph 130 of the Complaint.

131.   All Documents and Communications Concerning the IPIC guarantee for the May 21, 2012 bond offering.

132.   All Documents and Communications Concerning 1MDB's seeking of financial advice from Goldman Sachs in connection with an anticipated acquisition of power assets from Genting Berhad as referenced in Paragraph 135 of the Complaint.

133.   All Documents and Communications Concerning "Project Maximus."

134.   All Documents and Communications between 1MDB and Goldman Sachs Concerning "Project Maximus" and/or the October 19, 2012 bond offering.

135.   All Documents and Communications Concerning the October 19, 2012 Bond Issue referenced in Paragraphs 135-142 of the Complaint.

Exhibits A-C                                                                 83

136.   All Documents and Communications Concerning 1MDB Energy (Langat) Limited.

137.   All Documents and Communications Concerning the offering circular for the October 19, 2012 bond offering referenced in Paragraph 138 of the Complaint.

138.   All Documents and Communications Concerning the "Documentation associated with the bond deal" referenced in Paragraph 144 of the Complaint.

139.   All Documents and Communications Concerning IPIC's agreement to "privately secure the bonds on a bilateral basis with Goldman" as referenced in Paragraph 141 of the Complaint.

140.   All Documents and Communications Concerning the ownership and management of Falcon Bank as referenced in Paragraph 148 of the Complaint.

141.   All Documents, Communications and records Concerning the account at Falcon Private Bank Limited referenced in Paragraph 150 of the Complaint.

142.   All Documents, Communications and records Concerning the account at Citibank-Singapore referenced at Paragraph 151 of the Complaint.

143.   All Documents and Communications Concerning the allegation that "the funds transmitted from 1MDB to the Aabar-BVI Swiss Account were not held in that account for the benefit of 1MDB, IPIC, or Aabar" as referenced in Paragraph 158 of the Complaint.

144.   All Documents and Communications Concerning the allegation that "the Aabar-BVI Swiss Account was used to conceal and to facilitate this unlawful diversion of funds" as referenced in Paragraph 165 of the Complaint.

145.   All Documents, Communications and bank records Concerning the transfers referenced in table 5 of Paragraph 167 of the Complaint.

146.   All Documents, Communications, or bank records Concerning Foreign FX Trading Limited.

147.   All Documents and Communications Concerning Blackstone Asia Real Estate Partners alleged use of Raffles Cash Exchange.

148.   All Documents and Communications Concerning Enterprise Emerging Markets Fund.

149.   All Documents and Communications Concerning Cistenique Investment Fund.

150.   All Documents, Communications and bank records Concerning the transfers from Aabar BVI to Enterprise Emerging Markets Fund and Cistenique Investment Fund referenced in Paragraph 173 of the Complaint.

151.   All Documents and Communications Concerning the transfers from Enterprise Emerging Markets Fund or Cistenique Investment Fund to Blackstone Asia Real Estate Partners referenced in Paragraph 175 of the Complaint.

152.   All Documents and Communications Concerning the payments or transfers to Qubaisi, Husseiny, Malaysian Official 1 or 1MDB Officer 3 referenced in Paragraphs 178 and 181 of the Complaint.

153.   All Documents and Communications Concerning Vasco Investments Services SA.

154.   All Documents and Communications Concerning the wire transfers referenced in Paragraph 181, Table 6 of the Complaint.

155.   All Documents and Communications Concerning IPIC's Articles of Association referenced in Paragraph 184 of the Complaint.

156.   All Documents and Communications Concerning the allegation that "Low, Tan, and Qubaisi knew that the funds had been misappropriated from 1MDB and/or IPIC, and they intended to deprive 1MDB and/or IPIC of ownership over those funds" as referenced in Paragraph 185 of the Complaint.

157.   All Documents and Communications Concerning the wire transfers referenced in Paragraph 187, Table 7 of the Complaint.

158.   All Documents and Communications Concerning the wire transfers referenced in Paragraphs 189 – 192 of the Complaint.

159.   All Documents and Communications Concerning Rayan Inc.

160.   All Documents and Communications Concerning MB Consulting LLC.

161.   All Documents and Communications Concerning River Dee International SA.

162.   All Documents and Communications Concerning Red Granite Capital Limited.

163.   All Documents and Communications Concerning the wire transfer referenced in Paragraph 197 of the Complaint.

164.   All Documents and Communications Concerning the allegation that Blackstone Asia Real Estate Partners was used as an intermediary to "obscure" the fact that 1MDB bond proceeds were being sent from Aabar BVI referenced in Paragraph 200 of the Complaint.

165.   All Documents and Communications Concerning the wire transfers referenced in Paragraph 203, Table 8 of the Complaint.

166.   All Documents and Communications Concerning the "gift" referenced in Paragraph 205 of the Complaint.

167.   All Documents, Communications and bank records Concerning the transfers referenced in Paragraph 206 of the Complaint.

168.   All Nigro Karlin Segal Feldstein & Bolno Documents and Communications Concerning Aziz or Red Granite, including but not limited to those identified in Paragraphs 208-209 of the Complaint.

169.   All Documents, Communications and bank records Concerning the transfers referenced in footnote 12 of the Complaint.

170.   All Documents, Communications and bank records Concerning the balance sheets of Red Granite Pictures and Red Granite Capital referenced in Paragraph 216 of the Complaint.

171.   All Documents, Communications and bank records Concerning the allegation that the funds transferred from Aabar BVI to Red Granite Capital did not represent a "legitimate investment" by 1MDB, IPIC, or Aabar in Red Granite Pictures referenced in Paragraph 216 of the Complaint.

172.   All Documents and Communications Concerning Solution Century Limited.

173.   All Documents and Communications Concerning Alsen Chance Holdings Limited.

174.   All Documents, Communications and bank records Concerning the transfers referenced in Paragraphs 220 – 225.

175.   All Documents and Communications Concerning Player No XXX4296 referenced in Paragraphs 222-223 of the Complaint.

176.   All Documents, Communications and bank records Concerning the "records" referenced in Paragraph 223 of the Complaint.

177.   All Documents and Communications Concerning Player No XXX8710 referenced in Paragraph 224 of the Complaint.

178.   All Documents and Communications Concerning the allegation that "several individuals gambled with Low on this occasion, using his account" referenced in Paragraph 225 of the Complaint.

179.   All Documents, Communications and bank records Concerning the allegation that "Low, Tan, Aziz, and McFarland gambled together at the Venetian Casino on other occasions, including several times in 2014" referenced in footnote 13 of the Complaint.

180.   All Documents and Communications Concerning the purported "material misrepresentations and omitted material facts" referenced in Paragraph 227 of the Complaint.

181.   All Documents and Communications Concerning the March 2013 Goldman-underwritten bonds referenced in Paragraph 228 of the Complaint.

182.   All Documents and Communications Concerning Tanore Finance Corporation.

183.   All Documents and Communications Concerning the Tanore Account referenced in Paragraphs 228-229 of the Complaint.

184.   All Documents and Communications Concerning the March 2013 Goldman-underwritten bonds referenced in Paragraph 228 of the Complaint.

185.   All Documents and Communications Concerning the Abu Dhabi Malaysia Investment Company, including but not limited to Documents and Communications Concerning the ADMIC Agreement referenced in Paragraphs 231-233 of the Complaint.

186.   All Documents and Communications Concerning 1MDB's appointment of Goldman Sachs to "finance its capital contribution to the planned joint venture" referenced in Paragraph 235 of the Complaint.

187.   All Documents and Communications between employees of Goldman Sachs and employees of 1MDB Concerning "Project Catalyze" and/or the March 19, 2013 bond issue.

188.   All Documents and Communications Concerning "Project Catalyze."

189.   All Documents and Communications Concerning 1MDB Global Investments Limited.

190.   All Documents and Communications Concerning the offer circular referenced in Paragraph 239 of the Complaint.

191.   All Documents and Communications Concerning the purported omission of "material facts" referenced in Paragraph 242 of the Complaint.

192.   All Documents and Communications Concerning Granton Property Holdings Limited.

193.   All Documents and Communications Concerning Devonshire Capital Growth Fund.

194.   All Documents and Communications Concerning Citco referenced in Paragraphs 173 and 245 of the Complaint.

195.   All Documents and Communications Concerning the power of attorney referenced in Paragraph 249 of the Complaint.

196.   All Documents and Communications Concerning the wire transfers identified in Paragraphs 244 through 253 of the Complaint.

197.   All Documents and Communications Concerning the wire transfers identified in Paragraphs 259 through 264 of the Complaint.

198.   All Documents and Communications Concerning the account at Christie's Auction House in the name of Tanore Finance Corporation and/or account number XXX7644 including but not limited to a letter dated May 8, 2013 referenced in Paragraph 266.

199.   All Documents and Communications Concerning Christopher "Joey" McFarland being designated and subsequently representing Tanore Finance Corporation in respect of its account at Christie's, referenced in Paragraph 267.

200.   All Documents, Communications and bank records Concerning the purchase of the following pieces of artwork referenced in Paragraphs 268, 270, and 275: (1) the Ryden Work; (2) the Ruscha Work; (3) Dustheads; (4) Calder Standing Mobile; (5) Tic Tac Toe; (6) the Fontana Piece; (7)  the Rothko Piece; (8) Van Gogh Artwork.

201.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the Senior Vice President at Christie's referenced in Paragraph 272 of the Complaint.

202.   All Documents and Communications Concerning the allegation of the "deliberate steps"  referenced in Paragraph 273 of the Complaint.

203.   All Documents and Communications Concerning the "letter agreements" referenced in Paragraph 277 of the Complaint.

204.   All Documents and Communications Concerning the transmission of "several documents" including but not limited to "copies of the unsigned assignment agreements" referenced in Paragraph 278 of the Complaint.

205.   All Communications between or among Christie's Auction House and Eric Tan, Jho Low, Tanore, Triple Eight Ltd., or Christopher "Joey" McFarland.

206.   All Documents and Communications Concerning the "gift letters" referenced in Paragraph 283 of the Complaint.

207.   All Documents and Communications Concerning the financing request from Sotheby's Financial Services as referenced in Paragraphs 288 and 445 of the Complaint.

208.   All Documents and Communications Concerning the allegation that Jho Low attended auctions where Tanore Finance Corporation bid on art referenced in Paragraph 290 of the Complaint.

209.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/occupation of the L'Ermitage Property referenced in Paragraphs 292 – 305, including but not limited to the transfers referenced in table 11 in Paragraph 300 of the Complaint.

210.   All Documents and Communications Concerning Jynwel Capital Ltd.

211.   All Documents and Communications Concerning the "Shearman internal records" referenced in Paragraphs 301, 320, 325, 338, 339, 341, 347, 348 of the Complaint.

212.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Hillcrest Property 1, referenced in Paragraphs 306 – 322 including but not limited to the transfers contained in table 12 in Paragraph 315 of the Complaint.

213.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Li Lin Seet.

214.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the "California Realtor" referenced in Paragraph 309 of the Complaint.

215.   All Documents and Communications Concerning Great Delight Limited.

216.   All Documents and Communications Concerning Kreger Trading Inc.

217.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Park Laurel Condominium, referenced in Paragraphs 323 – 331 of the Complaint.

218.   All Documents and Communications Concerning Sullivan & Cromwell's role with respect to (1) Great Delight Limited; (ii) Hillcrest Property 1; (iii) any wire transfers Concerning the purchase or transfer of Hillcrest Property 1; or (iv) Park Laurel Condominium.

219.   All Documents and Communications Concerning Ivory Industrial Investments Ltd.

220.   All Documents and Communications Concerning Assured Alliance Investment Corporation.

221.   All Documents and Communications Concerning Park Laurel (NYC) Ltd.

222.   All Documents and Communications Concerning the real estate agent referenced in Paragraph 324 of the Complaint and the Park Laurel Condominium.

223.   All Documents and Communications Concerning Sorcem Investments Inc.

224.   All Documents and Communications Concerning the account at Rothschild Bank AG held in the name of Park Laurel NYC Ltd. referenced in Paragraph 331.

225.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Bombardier Jet, referenced in Paragraphs 332 – 343 of the Complaint.

226.   All Documents and Communications Concerning J.T. Aviation Corp.

227.   All Documents and Communications Concerning Wynton Aviation (Global 5000) Ltd.

228.   All Documents and Communications Concerning the "Wells Fargo records" referenced in Paragraph 336 of the Complaint.

229.   All Documents and Communications Concerning Wells Fargo and the Bombardier Jet.

230.   All Documents and Communications Concerning Crowe & Dunleavy and the Bombardier Jet.

231.   All Documents and Communications Concerning the account at the Bank of Oklahoma in the name of Crowe and Dunleavy Aircraft Escrow 1.

232.   All Documents and Communications Concerning the account at Citibank referenced in Paragraph 342.

233.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Time Warner Penthouse and Time Warner Storage Unit, referenced in Paragraphs 344 – 350 of the Complaint.

234.   All Documents and Communications Concerning Harvey & Hackett.

235.   All Documents and Communications Concerning Sabola Limited.

236.   All Documents and Communications Concerning Selune Ltd.

237.   All Documents and Communications Concerning the representations to BSI Bank in Singapore referenced in Paragraph 346 of the Complaint.

238.   All Documents and Communications Concerning the account at Rothschild Bank AG in the name of 1/80 Columbus Circle (NYC) referenced in Paragraph 347 of the Complaint.

239.   All Documents, Communications, and bank records Concerning the six checks referenced in Paragraph 348 of the Complaint.

240.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the "realtor involved in the sale of the Time Warner Penthouse and Time Warner Storage Unit" referenced in Paragraph 350 of the Complaint.

241.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Oriole Mansion, referenced in Paragraphs 351 - 357 of the Complaint.

242.   All Documents and Communications Concerning DLA Piper's alleged involvement in the purchase or sale of Oriole Mansion and the Greene Condominium.

243.   All Documents and Communications Concerning the "Citibank records" referenced in Paragraph 356 of the Complaint.

244.   All Documents and Communications Concerning the account at Bank of America in the name of Chicago Title Company referenced in Paragraph 357 of the Complaint.

245.   All Documents and Communications Concerning the escrow agent records referenced in Paragraph 357 of the Complaint.

246.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and/or occupation of the Greene Condominium, referenced in Paragraphs 358 - 362 of the Complaint.

247.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the "realtor" referenced in Paragraph 362 of the Complaint.

248.   All Documents, Communications and bank records Concerning the purchase, sale, ownership and management of any interest in EMI, referenced in Paragraphs 363 – 384 of the Complaint.

249.   All Documents and Communications Concerning Nile Acquisition Holding Company Ltd.

250.   All Documents and Communications Concerning Nile Acquisition LLC.

251.   All Documents and Communications Concerning DH Publishing L.P.

252.   All Documents and Communications Concerning EMI Group Global Limited.

253.   All Documents and Communications Concerning Sony Music Holdings and/or the Estate of Michael Jackson.

254.   All Documents and Communications Concerning the Administration Agreement referenced in Paragraph 366 of the Complaint.

255.   All Documents and Communications Concerning Mubadala Development Company and the EMI Partnership.

256.   All Documents and Communications Concerning JCL Media (EMI Publishing) Ltd.

257.   All Documents and Communications Concerning JW Nile (BVI) Ltd.

258.   All Documents and Communications Concerning BW Publishing Ltd.

259.   All Documents and Communications Concerning Fifty Sixth Investment Company Ltd.

260.   All Documents and Communications Concerning  (i) Nile Cayman Holding Ltd., (ii) Pub West LLC, a Delaware company; (iii) GSO Capital Opportunities Fund II (Luxembourg) S.a.r.l.; (iv) Blackstone/GSO Capital Solutions Offshore Funding (Luxembourg) S.a.r.l.; (v) GSO SJ Partners LP; or (vi) the LOW EMI Partner.

261.   All Documents and Communications Concerning the "internal EMI document" referenced in Paragraph 371 of the Complaint.

262.   All Documents and Communications Concerning the EMI Investment Agreement referenced in Paragraph 372 of the Complaint.

263.   All Documents and Communications Concerning how the "proceeds of the share proceeds" were used, referenced in Paragraph 376 of the Complaint.

264.   All Documents and Communications Concerning the Fourth Amended and Restated Exempted Limited Partnership Agreement referenced in Paragraph 377 of the Complaint.

265.   All Documents and Communications Concerning the "materials" referenced in Paragraph 383(d) and Paragraph 413(d) of the Complaint.

266.   All Documents and Communications Concerning the allegation that "he knew those funds constituted misappropriated funds and intended to deprive 1MDB of ownership of those funds" referenced in Paragraph 384 of the Complaint.

267.   All Documents, Communications and bank records Concerning the funding of the Motion Picture, "Wolf of Wall Street", referenced in Paragraphs 385 - 401 of the Complaint.

268.   All Documents, Communications and bank records Concerning the transfers referenced in Paragraph 392 of the Complaint.

269.   All Documents and Communications Concerning the Red Granite email account with the domain name @redgranitepictures.com maintained by Low referenced in Paragraph 395 of the Complaint.

270.   All Documents, Communications and bank records Concerning the purchase, sale, ownership, funding and/or management of any interest in the Park Lane Hotel, referenced in Paragraphs 402 – 434 of the Complaint.

271.   All Documents and Communications Concerning Dragon Market Limited.

272.   All Documents and Communications Concerning Dragon Dynasty Limited.

273.   All Documents and Communications Concerning the allegation that "he knew those funds constituted misappropriated funds and intended to deprive 1MDB of ownership of those funds" referenced in Paragraph 414 of the Complaint.

274.   All Documents and Communications Concerning the Witkoff Group LLC.

275.   All Documents and Communications Concerning Symphony CP (Park Lane) LLC or Symphony CP Investments Holdings LLC.

276.   All Documents and Communications Concerning Virtue Trustees (Switzerland) AG and Symphony CP Investments LLC.

277.   All Documents and Communications Concerning Symphony CP (Park Lane) Owner LLC.

278.   All Documents and Communications Concerning WG Partners 36 CPS LLC.

279.   All Documents and Communications Concerning the "transactional documents" referenced in Paragraph 417 of the Complaint.

280.   All Documents and Communications Concerning the formation of the Park Lane Partnership and the initial capitalization referenced in Paragraph 423 of the Complaint.

281.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the "Principal at Witkoff" referenced in Paragraph 432 of the Complaint.

282.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the "Witkoff Managing Director" referenced in Paragraphs 421 and 433 of the Complaint.

283.   All Documents and Communications Concerning the "promotional material" and the "background document" referenced in Paragraph 434 of the Complaint.

284.   All Documents and Communications Concerning Akin Gump Strauss Hauer & Feld LLP.

285.   All Documents and Communications Concerning the Commonwealth Land and Title Insurance Company.

286.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the employee at SNS Fine Art referenced in Paragraph 442 of the Complaint.

287.   All Documents and Communications Concerning the loan from Sotheby's Financial Services, Inc. referenced in Paragraph 445 of the Complaint, including all Documents and Communications Concerning  amendments to the loan.

288.   All Documents and Communications Concerning collateral in respect of the loan from Sotheby's Financial Services and the sale of said collateral referenced in Paragraph 447 of the Complaint.

289.   All Documents and Communications Concerning Triple Eight Ltd.

290.   All Documents, Communications and bank records Concerning the purchase of the Saint Georges Painting referenced in Paragraph 448 of the Complaint.

291.   All Documents,  Communications and bank records Concerning the purchase of the Nympheas Painting referenced in Paragraph 461 of the Complaint and the Grand Nympheas Painting referenced in Paragraph 473 of the Amended Complaint filed in 16-cv-05366.

292.   All Documents, Communications and bank records Concerning the purchase of the Petit Nympheas Painting referenced in Paragraph 461 of the Amended Complaint filed in 16-cv-05366.

293.   All Documents, Communications and bank records Concerning the purchase, sale, ownership, and/or occupation of the Walker Tower Penthouse, referenced in Paragraphs 470 – 479 of the Complaint.

294.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Neil Moffitt.

295.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning the Red Granite Business Manager

referenced in Paragraphs 208(b), 209 of the Complaint and 507 of the Amended Complaint filed in 16-cv-05366.

296. All Documents, Communications and bank records Concerning the purchase, sale, ownership, and /or occupation of the Laurel Beverly Hills Mansion, referenced in Paragraphs 480 - 484 of the Complaint.

297. All Documents, Communications and bank records Concerning the purchase, sale, ownership, and/or occupation of the Hillcrest Property 2, referenced in Paragraphs 485 - 491 of the Complaint.

298. All Documents, Communications and bank records Concerning the purchase, sale, ownership, and/or occupation of the Qentas Townhouse, referenced in Paragraphs 492 - 498 of the Complaint.

299. All Documents and Communications Concerning Lygon Place (London) Limited.

300. All Documents and Communications Concerning O & H Properties Developments Limited.

301. All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Singapore Banker 1.

302. All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Christopher "Joey" McFarland.

303. All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning "Hong Kong Art Dealer" referenced in Paragraph 470 of the Amended Complaint filed in 16-cv-05366.

304. All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning BSI Bank officials referenced in Paragraph 480 of the Amended Complaint filed in 16-cv-05366.

305. All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning "Monaco Art Dealer" referenced in Paragraph 474 of the Amended Complaint filed in 16-cv-05366.

306.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Tan Kim Loong, also known as Eric Tan.

307.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Patrick Mahony.

308.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Riza Shahriz Bin Abdul Aziz.

309.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Mohamed Ahmed Badawy Al-Husseiny.

310.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Khadem Abdulla Al Qubasi.

311.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Jasmine Loo also known as Loo Ai Swan.

312.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Yeo Jiawei.

313.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Yak Yew Chee.

314.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning 1MDB Officer 1.

315.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning any Goldman Sachs Representatives Concerning the allegations in the Complaint.

316.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Xavier Justo.

317.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning 1MDB Officer 2.

318.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning 1MDB Officer 3.

319.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning Malaysian Official 1.

320.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning any Deutsche Bank Representatives Concerning the allegations in the Complaint.

321.   All Documents and Communications, including but not limited to any statements or FD-302 Reports, Concerning any Bank Negara Representatives Concerning the allegations in the Complaint. All Documents and Communications Concerning Low Taek Jho, also known as Jho Low.

322.   All Documents and Communications Concerning Low May Lin.

323.   All Documents and Communications Concerning Low Hock Peng also known as Larry Low.

324.   All Documents and Communications Concerning Goh Gaik Ewe also known as Evelyn Low.

325.   All Documents and Communications Concerning Low Taek Szen also known as Szen Low.

326.   All Documents and Communications Concerning LBH Real Estate (Beverly Hills) LLC.

327.   All Documents and Communications Concerning Wynton Real Estate (Beverly Hills) LLC.

328.   All Documents and Communications Concerning the Viceroy Hotel Group.

329.   All Documents and Communications Concerning the Chicago Title Insurance Company.

330.   All Documents and Communications Concerning TWOWS LLC.

331.   All Documents and Communications Concerning Red Granite Capital Limited.

332.   All Documents and Communications Concerning Red Granite Pictures, Inc.

333.   All Documents and Communications Concerning 1169 Hillcrest LLC.

334.   All Documents and Communications Concerning Skyview Capital, LLC.

335.   All Documents and Communications Concerning NAM2 LLC.

336.   All Documents and Communications Concerning Palumbo Design, LLC.

337.   All Documents and Communications Concerning Symphony CP Investments, LLC.

338.   All Documents and Communications Concerning Park Laurel Acquisition LLC.

339.   All Documents and Communications Concerning 80 Columbus Circle (NYC) LLC.

340.   All Documents and Communications Concerning 118 Greene Street (NYC) LLC.

341.   All Documents and Communications Concerning 212 West 18th Street, LLC.

342.   All Documents and Communications Concerning 912 North Hillcrest Road (BH) LLC.

343.   All Documents and Communications Concerning Oriole Drive (LA) LLC.

344.   All Documents and Communications Concerning Laurel Beverly Hills Holdings LLC.

345.   All Documents and Communications Concerning Qentas Holdings Limited.

346.   All Documents and Communications with Andrew J. Levander Concerning the Subject Assets.

347.   All Documents and Communications with Steven C. Witkoff Concerning the Subject Assets.

348.   All Documents and Communications with Joseph Fazioli, Anna Do, or Robert Gold Concerning the Subject Assets.

349.   All Documents and Communications Concerning the purported "foreign law bases for forfeiture," including, but not limited to, violations of the laws of Malaysia and the United Arab Emirates, as referenced in paragraphs 499, 500, and 501 of the Complaint.

350.   All Documents and Communications Concerning each Monetary Transaction related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

351.   All Documents and Communications Concerning each Monetary Transaction related to the Subject Assets that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

352.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that each of the Defendant Asset and/or each of the Subject Assets listed in paragraph 4 of the Complaint is property involved in one or more money laundering transactions in violation of 18 U.S.C. § 1956 and/or 1957, or constitutes or is derived from proceeds traceable to a money laundering transaction in violation of 18 U.S.C. § 1956.

353.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that  the entities identified in the Complaint as 1Malaysia Development Berhad, Terengganu Investment Authority, PetroSaudi International Ltd., 1MDB PetroSaudi, Ltd., Aabar Investments PJS, Aabar Investments PJS Ltd.,

Abu Dhabi Malaysia Investment Company, and Abu Dhabi-Kuwait-Malaysia Investment Corporation were involved in any Monetary Transaction related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

354.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that the individuals identified in paragraphs 25 through 28 of the Complaint as 1MDB Officer 1, 1MDB Officer 2, 1MDB Officer 3, and Malaysian Official 1 were involved in any Monetary Transaction related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

355.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that the individuals identified in the Complaint as Low Taek Jho, Riza Shahriz Bin Abdul Aziz, Tan Kim Loong, Khadem Abdulla Al Qubaisi, Mohamed Ahmed Badawy Al-Husseiny, Taek Szen Low, Low Hock Peng, Low May Lin, Li Lin Seet, and Christopher "Joey" MacFarland were involved in any Monetary Transaction related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

356.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that the individuals identified in the Complaint as Chairman of the 1MDB Board, 1MDB's Chief Financial Officer, 1MDB's Director of Investments, the Former Chief Investment Officer of 1MDB, the remaining 1MDB Directors, the PetroSaudi CEO, Singapore Banker 1, the Deutsche Bank Employee, the Deutsche Bank Supervisor, the Deutsche Bank Compliance Officer, the Bank Negara Official, the Acting Deputy Director of Bank Negara's Foreign Exchange Administration Department, the PetroSaudi Co-Founder, the Goldman Managing Director, the Goldman employees, the BSI bank officials, the Red Granite Business Manager, and the SNS Employee were involved in any Monetary Transaction

related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956.

357.   All Documents and Communications that prove or disprove, or tend to prove or disprove, that  the Financial Institutions and their Representatives and employees identified in the Complaint were involved in any Monetary Transaction related to the Defendant Asset that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956, including, but not limited to, Bank Negara,  Deutsche Bank (Malaysia) Berhad, J.P. Morgan Chase Bank, RBS Coutts Bank, Banque Federale de Commerce, UBS Bank SA, Moroccan Foreign Trade Bank International SA, Julius Baer,  First America Trust F.F.B , BSI Bank, AmBank, Standard Chartered Bank, ING Bank N.V., Riyad Bank, Falcon Private Bank Limited, Wells Fargo Bank Northwest, N.A., Bank of New York Mellon, Bank Privee Edmond de Rothschild, BHF Bank in Frankfurt, Germany, Bank of America, City National Bank, Rothschild Bank AG, Wells Fargo Bank, Bank of Oklahoma, First Gulf Bank, Amicorp Bank and Trust, Amicorp Bank, M&T Bank, Chase Manhattan Bank, Caledonia Bank Ltd., and Citibank referring or relating to: each Defendant Asset, Subject Asset, the entities listed in Interrogatory No. 2, the persons listed in Interrogatories Nos. 3-5, and the accounts listed in Interrogatory No. 7.

358.   All Documents and Communications Concerning the accounts held by Financial Institutions and other entities referenced in the Complaint that relate to Monetary Transactions that You allege to have violated 18 U.S.C. §§ 1956 and/or 1957, or constituted or derived from proceeds traceable to a violation of 18 U.S.C. § 1956, including, but not limited to:

(a) Good Star Limited ("Good Star Account")

(b) Aabar Investments PJS Limited ("Aabar-BVI Swiss Account")

(c) Tanore Finance Corporation ("Tanore Account")

(d) PetroSaudi International Ltd

(e) 1MDB PetroSaudi JV ("J.P. Morgan JV Account")

(f) 1MDB Global Investments Limited

(g) Riyad Bank ("PSI Co-Founder Account")

(h) AmBank ("AMPRIVATE BANKING-MR Account")

(i) Abu Dhabi Kuwait Malaysia Investment Corp. ("ADKMIC BSI
Account")

(j) Blackstone Asia Real Estate Partners ("Blackstone Account")

(k) 1MDB Energy Limited

(l) 1MDB Energy (Langat) Limited

(m)     Tanjong Energy Holdings Sdn Bhd

(n) Tanjong Power Holdings Sdn Bhd

(o) Genting Power Holdings Limited

(p) Granton Property Holdings Limited ("Granton Account")

(q) Devonshire Capital Growth Fund

(r) Enterprise Emerging Markets Fund

(s) Cistenique Investment Fund

(t) Solution Century Limited

(u) Vasco Investments Services SA ("Vasco Account")

(v) BHF Bank ("Rayan Account")

(w)     MB Consulting LLC ("MB Consulting Account")

(x) River Dee International SA ("River Dee Account")

(y) Red Granite Capital Limited ("Red Granite Capital Account")

(z) Red Granite Pictures

(aa)     City National Bank ("RGP Operating Account" and "RGP
Pictures Account")

(bb)     Alsen Chance Holdings Limited ("Alsen Chance Account")

(cc) Las Vegas Sands, LLC

(dd)      Christie's Auction House

(ee) Chicago Title Escrow Account

(ff) Bank of Oklahoma ("Crowe Aircraft Escrow Account") BSI Bank ("LHP Account" and LOW BSI Account" and "LOW EMI Account")

(gg)      Selune Ltd.

(hh)      1/80 Columbus Circle (NYC)

(ii) 1/Oriole Drive (LA) LLC

(jj) Jynwel Capital ("Jynwel Account A" and "Jynwel Account B")

(kk)      Bank of New York Mellon ("EMI Escrow Account")

(ll) Mubadala Treasury Holding Co. LLC

(mm)      Mubadala Development Company

(nn)  Dragon Market Limited ("Dragon Market Account")

(oo)      Dragon Dynasty Limited ("Dragon Dynasty Account")

(pp)      Shearman & Sterling IOLA Account

(qq)      DLA Piper IOLA Account

(rr) Commonwealth Land Title Insurance Company

(ss) Triple Eight Ltd.

(tt) TKIL Capital Partners Ltd.

(uu)      Smart Power

(vv) Wynton Real Estate (Beverly Hills) LLC

(ww)      LBH Real Estate (Beverly Hills) LLC

(xx) 912 North Hillcrest Road (BH) LLC

(yy)      Great Delight Limited

(zz) Kreger Trading Inc.

(aaa)      Park Laurel (NYC) Ltd.

(bbb)      Ivory Industrial Investments Ltd.

(ccc)      Park Laurel Acquisition LLC

(ddd)      Sullivan & Cromwell Attorney Trust Account

(eee)     Sorcem Investments Inc.

(fff) J.T. Aviation Corp.

(ggg)     Wynton Aviation (Global 5000) Ltd.

(hhh)     Sabola Limited

(iii) 80 Columbus Circle (NYC) LLC

(jjj) Oriole Drive (LA) LLC

(kkk)     118 Greene Street (NYC) LLC

(lll) JCL Media (EMI Publishing) Ltd.

(mmm)   JW Nile (BVI) Ltd.

(nnn)     Nile Acquisition Holding Company Ltd. LOW EMI Partner

(ooo)   TWOWS LLC ("TWOWS Account #1" and "TWOWS Account #2")

(ppp)   Symphony CP (Park Lane) LLC

(qqq)   Symphony CP Investments LLC

(rrr) Symphony CP Investments Holdings LLC

(sss) Symphony CP (Park Lane) Owner LLC

(ttt) SNS Fine Arts

(uuu)  The Witkoff Group Virtue Trustees (Switzerland) AG

(vvv)  Rothschild Trust (Schweiz) AG

(www) Sotheby's Financial Services, Inc.

(xxx)  The Banque Federale de Commerce, S.A. account in Comoros referenced in Paragraph 471 of the Amended Complaint filed in 16-cv-05366.

DATED:  June 6, 2017

Ekwan E. Rhow
Jeremy D. Matz
Naeun Rim
Patricia H. Jun
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By:       /s/ Naeun Rim
                 Naeun Rim
Attorneys for Claimants LBH Real Estate (Beverly Hills) LLC, JW Hospitality (VHG US) LLC and JW Hospitality (VHG INTL) Ltd.

# PROOF OF SERVICE

### *United States of America v. Real Property Located in Los Angeles, California*
### Case No. 16-CV-5378-DSF-PLA

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

On June 6, 2017, I served the following document(s) described as **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent from e-mail address aeastman@birdmarella.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 6, 2017, at Los Angeles, California.

*Alicia L. Eastman*

_____
Alicia L. Eastman

Exhibits A-C

109

**SERVICE LIST**
*United States of America v. Real Property Located in Los Angeles, California*
**Case No. 16-CV-5378-DSF-PLA**

John K. Kucera
U.S. Attorney
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Los Angeles, CA  90012
Telephone: (213) 894-3391 /6595
Facsimile: (213) 894-7177
Email: John.Kucera@usdoj.gov
**Counsel for United States of America**

Christen A. Sproule
Assistant United States Attorney
United States Courthouse
Asset Forfeiture Section
1400 United States Courthouse
312 N. Spring Street
Los Angeles, California  90012
Telephone: (213) 894-4493
Facsimile: (213) 894-7177
Email: christen.a.sproule@usdoj.gov
**Counsel for United States of America**

Kyle Renee Freeny
US Department of Justice
Criminal Division
1400 New York Avenue NW 10th Floor
Washington, DC  20005
Telephone: 202-616-2909
Facsimile: 202-616-2547
Email: kyle.freeny@usdoj.gov
**Counsel for United States of America**

Woo S.  Lee
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10th Floor
Washington, CC  20530
Telephone: (202) 598-2249
Email: woo.lee@usdoj.gov
**Counsel for United States of America**

Andrea Duvall
Email: Andrea.Duvall@usdoj.gov
**Counsel for United States of America**